THE ATTORNEY-GENERAL OF THE STATE OF FLOR-
IDA EX REL. JOSEPH WILKINS, APPELLANT, VS. W.
H. CONNORS, APPELLEE.

MUNICIPAL LAW, constitutionality of; CITY MARSHAL, powers and
duties of; QUO WARRANTO, practice in.

1. The interposition of a demurrer to an information in *quo war-
ranto*, that presents such a statement of facts as, when un-
controverted, would entitle the relator to the relief sought, is
an admission of the facts alleged.

2. Chapter 3607 laws, approved February 12th, 1885, making it the
duty of the sheriff of Escambia county to perform the duties
of city marshal in the city of Pensacola, in his county, is not
obnoxious to, or in conflict with that clause of section 15, of
Art. XVI, of the constitution of 1885, which provides that "no
person shall hold, or perform the functions of more than one
office *under the government of this state* at the same time."

3. Municipal ordinances creating the office, *eo nomine*, of "chief
of police" without any provision of law authorizing the crea-
tion of such office, and assigning to it duties and functions
that have been by law lodged in another official, are *ultra vires*,
illegal and void.

4. The city marshal of a municipality in so far as the authority
and duties of his office are concerned, occupies the same rela-
tion to the governmental affairs of the municipality as a sheriff
does to his county. He is the chief executive officer of the
municipality, clothed with authority to apprehend offenders
against its ordinances, etc.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion of the court.

*John C. Avery* for Appellant.

*Blount & Blount* for Appellee.

TAYLOR, J.:

This is an appeal from a judgment rendered in favor of the defendant in a *quo warranto* proceeding.

The information which was filed by the Attorney-General in September, 1889, he suing "for the people of the State," alleges that Joseph Wilkins was elected sheriff of Escambia county on the sixth day of November, 1888, and still holds such office, and by virtue of his title thereto is entitled to the office and to the discharge of the duties and enjoyment of the emoluments which, prior to the dissolution of the municipal corporation of Pensacola, attached to the office of City Marshal of that city, which duties and emoluments are vested by the statute under which the provisional municipality of the City of Pensacola was and is organized, in the sheriff of Escambia county; that Connors, the defendant, for the space of three months, in the county of Escambia, and Provisional Municipality of Pensacola, unlawfully held and executed, and still unlawfully holds and executes without any warrant or right whatever, many of the powers and duties, and enjoys the emoluments which lawfully attach and belong to the said Joseph Wilkins

by virtue of his election and occupation of the office of sheriff of Escambia county conferred upon him by the provisions of the law under which the said Provisional Municipality of Pensacola exists.

That the act approved February 12th, 1835, entitled "An act to amend section nine of an act to dissolve municipal corporations under circumstances therein stated, and to provide provisional government for the the same, approved January 28, 1885, and to repeal the eighth section of that act," provides that it shall be the duty of the Sheriff for the county in which said city shall be situated to perform the duties of Marshal for such Provisional Municipality, and to appoint, subject to approval and removal by the board such number of policemen as may be authorized by the board. That notwithstanding such provision the defendant has assumed to be, and exercises the powers and duties of, chief of the police forces of the said provisional municipality ; has assumed, in disregard of the law and the rights of relator, to exclusively superintend, direct and control all police officers and policemen of the said provisional municipality in the discharge of duties assigned to them, and to be the chief conservator of the public peace of the municipality and superintendent of the making of complaints of offences against the ordinances thereof, and to perform all those duties which prior to the passage of the law under which the said municipality exists appertained to the office of City Marshal of the city of Pensacola, and which now law-

fully appertain to the office of Sheriff of Escambia county.

The information prays process for Connors to answer the people by what warrant he claims to hold and execute "the office and powers and duties aforesaid."

Connors answered that in May, 1885, he was appointed by relator, then Marshal of the Provisional Municipality of Pensacola, a policeman in and for the municipality, and that the appointment was thereafter duly approved by the Board of Commissioners of the Municipality, and thereafter he, still being a policeman, was made by the Board, Captain of Police, and afterwards on January 10th and February 16th, 1889, the board adopted a code of ordinances for said municipality, prescribing the duties of a Chief of Police, and this code is made a part of the answer, and then the respondent, still being a policeman of the municipality, was made Chief of Police, and has exercised the functions of Chief of Police, and none other.

That respondent has not received any emoluments appertaining to relator, whose compensation as Marshal has been paid by the Board under authority of law, and no part of such compensation has ever been paid to or is claimed by this respondent.

This answer was demurred to as bad in substance, in that it fails to set up any facts inconsistent with the rights of the people or said relator as set forth in the information, and the demurrer was overruled and leave given to relator to amend.

JANUARY TERM, 1891     333

Attor'y-Gen. ex rel. J. Wilkins v. W. H. Connors,—Opinion of Court.

Afterwards an amended information was filed, which is substantially the same as the other, except that it states specifically that the duties and powers alleged to have been usurped, appertained to the office of City Marshal at the time the relator was elected Sheriff. A demurrer was interposed to it and sustained, and final judgment rendered in favor of respondent. From this final judgment the relator appeals to this court.

By interposing a demurrer to the amended information the respondent Connors thereby admitted the allegations of fact in the amended information to be true. Considered abstractly, we think that the amended information in this case presents such a statement of facts as, when uncontroverted, would entitle the relator to the relief prayed. These facts being admitted by the demurrer to be true, the judgment of the court below should have been in favor of the relator upon the demurrer to the amended information. Upon this view this court might rest its judgment; but there are other questions presented by the record and commented upon by counsel in their arguments and briefs, that we deem it best to discuss, in order to arrive at a more complete disposition of the cause.

It is contended for the respondent that section one of Chapter 3607, entitled "An act to amend section 9, of an act to dissolve municipal corporations," &c., approved February 12th, 1885, which provides, among other things, that "it shall be the duty of the Sheriff for the county in which such city shall be situated to perform the duties of Marshal for such provisional

municipality, and to appoint, subject to the approval
and removal by the Board, such numbers of policemen
as may be authorized by the Board," &c., is obnoxious
to that clause of Section 15 of Article XVI of the Con-
stitution of 1885, which provides that "no person shall
hold, or perform the functions of more than one office
under the government of this State at the same time."
And in this connection it is urged for the respondent
that a City Marshal is a State officer in the sense of the
constitutional provision invoked, and that to put the
performance of the duties appertaing to his office upon
the Sheriff of a county, comes within the constitutional
inhibition above quoted. With this contention of the
respondent's counsel we cannot agree ; and it seems to
us that the plain meaning of the language used in the
clause of the Constitution invoked clearly negatives
this theory. The language of the Constitution is :
"No person shall hold, or perform the functions of,
more than one office under the government of this State
at the same time." The inhibition is aimed solely and
entirely against offices held under, or whose duties ap-
pertain to the government of the State. After careful
and exhaustive search we have been unable to find any
authority that holds that the government of municipal-
ities forms any part of the government of the State as
such, considered in the broad sense of the term "State
government." The government of the State as such is
reared upon and provided for in all of its departments
by the Constitution, but nowhere in our Constitution
are the governments of municipalities or their officials

either created or established as any part of our State
government, but their very creation, together with all
provisions for "their government" are reserved to the
legislative branch of the State government as erected
by the Constitution.   Section 8 of Article VIII of the
Constitution provides that "the Legislature shall have
power to establish and to abolish municipalities, to
provide for their government, to prescribe their juris-
diction and powers, and to alter or amend the same at
any time."   From this provision it will be seen that to
the Legislature is reserved the power, not only to cre-
ate, but to *abolish* municipal governments.   It could
hardly be contended that our Constitution intended to
clothe the Legislature with the power to wipe out of
existence any part of the great frame-work of State
government ; yet such would be the inference were we
to hold that the government of municipalities formed,
strictly speaking, any part of the government of the
State.   Again, Section 14 of Article XVI, Constitution
of 1885, provides as follows :   "All *State*, county and
municipal officers shall continue in office after the ex-
piration of their official terms until their successors are
duly qualified."   From this distinct denomination of
officers as being State, county and municipal, we think
our Constitution clearly recognizes a contradistinction
between State officers, county officers and municipal
officers.   County officers being in express terms created
and provided for by the Constitution of the State as
part of the machinery of the State's government in their

respective counties, are to be regarded, strictly speaking, as officers of the State.

Again, in enumerating what courts shall constitute the judicial power "of the State," the constitution, Art. V. sec. 1, says: "The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace." In this specific enumeration and grouping of the courts that are to be considered as constituting the judicial power or branch of the State government as such, there is a striking absence of any mention of municipal courts, the creation of which is also reserved to the legislature in sec. 34 of Art. V. of the Constitution. Had it been the intention of the framers of our constitution to have the officers of a municipality considered as officers "under the government of the State," certainly, in this specific mention of the courts in whom the judicial power of the State was to be lodged, so important a municipal official as one exercising the jurisdiction and powers of a court within the municipality would have been specifically included as part of the State's judicial power. While the officers of a municipality can be and are, in a confined and limited sense, considered as officers of the State, in that they are recognized by the laws of the State as being clothed with certain official powers and duties to be exercised inside the lines of certain circumscribed territorial limits within the State; and in the proper exercise of such official powers and duties, are protected by the

strong arm of the State's government, still they are incidents, auxiliaries and agencies only in their relation to the State's government, and have no place in the State's government as such, considered in its broad and comprehensive sense. Their official authority and power is confined strictly within the territory of their municipalities, and is further limited to things that pertain strictly to municipal and not State affairs. And if the legislature of the State should exercise its constitutional power to abolish the government of every municipality within her borders, the State's government, as contemplated by the constitution, would remain as such, just as complete and perfect as before, though perhaps not so efficient in the localities affected by such abrogation.

We think, therefore, that Chapter 3607 laws, approved February 12th, 1885, which imposes upon the sheriff of Escambia county, in addition to his duties as sheriff of such county, the duties and functions that appertained to the former office, (abrogated by said act,) of city marshal for the city of Pensacola, is not repugnant to the constitutional provision invoked. The following authorities sustain this view: People *ex rel.* Haines vs. Henry, 62 Cal., 557; People *ex rel.* Attorney-General vs. Provines, 34 Cal., 520; Uridias vs. Morrill, 22 Cal., 473; Brittin vs. Steber, 62 Mo., 370; State of Delaware vs. Wilmington City Council,

3 Harrington, 294; Waldo vs. Wallace, 12 Ind., 569; Respublica vs. Dallas, 3 Yeates (Penn.), 300; State *ex rel.* Platt vs. Kirk, 44 Ind., 401; Mohan vs. Jackson, 52 Ind., 599.

To the original information filed in this cause the respondent Connors answered, "that he had been made Chief of Police by the Board of Commissioners of the Municipality of Pensacola, and that by a code of ordinances adopted by said Board of Commissioners on February 16th, 1889, for said muncipality, the duties of a Chief of Police were provided for, and refers to said code of ordinances as part of his answer; and that he has exercised the functions conferred by said code of ordinances upon him as Chief of Police, and none other."

This brings us to a consideration of the legality of those provisions of the code of ordinances adopted February 16th, 1889, by the Commissioners of the City of Pensacola, for the government of said city, that provides for the creation of the office in said city of Chief of Police, and which prescribe the duties of such officer. In section 1, of Chapter IV, of said code, it is provided: "The officers of the municipality are, the President, the Vice-President, the Clerk, the City Eengineer, the City Physician, the Treasurer, the *Marshal*, the *Chief of Police*," &c. In Section 2, same Chapter, of said code, it is provided that the Chief of Police shall be elected annually by the Board, as the President is. Division 6, of Article IV, of

Chapter IV of said code, prescribing the powers and duties of the Chief of Police, provides as follows: "Sec. 1. The Chief of Police, under the supervision of the President, shall be the chief of all the police forces of the municipality.

"It shall be his duty:

"Sec. 2. To see that each police officer and policeman properly discharges the duties assigned to him.

"Sec. 3. To see that the public peace is preserved, and when any violation thereof, or of the ordinances, shall come to his knowledge, to cause the requisite complaint to be made, and see that the evidence is procured for the successful prosecution of the offender.

"Sec. 4. To obey, and cause the police force under him to obey, the directions of the President, and see that they perform their duties promptly and faithfully.

"Sec. 5. In case of tumult, riot, insurrection, or threat thereof, to take command (under the President's direction) in person, of the police and auxiliary forces, and direct their movements and operations in the discharge of their respective duties.

"Sec. 6. To attend, at the President's office, and at the prison, at such times as the President may direct.

"Sec. 7. To keep, and cause to be kept and made, at such time and in such manner as may be directed by the President, all records, lists, registers, books and reports concerning the affairs and operations of the police department.

"Sec. 8. To perform all other duties imposed upon him by this code, or any ordinances to be hereafter enacted, and to perform the functions of the Marshal, should that officer fail to qualify, or in his absence."

By the provisions of section 4, of Chapter 1688, laws, approved February 4th, 1869, entitled "An act to provide for the incorporation of cities and towns, and to establish a uniform system of municipal government in this State," it is provided that the qualified electors of the municipality, at the same time that they elected a mayor and city council, should also elect a city clerk and marshal. The effect of the provision of Chapter 3606, entitled "An act to dissolve municipal corporations under circumstances therein stated, and to provide provisional governments for the same," approved January 28th, 1885, upon the incorporation and government of the city of Pensacola, was to dissolve and abrogate the same; and by the provisions of section 5 of said last mentioned act it is made the duty of the Governor of this State to appoint a Board of seven Commissioners in all cities and towns whose governments are dissolved by the provisions of said act. And section 6 of said act provides "that all such cities and towns for which Commissioners shall be appointed, as provided for in section 5, are hereby declared to be provisional municipalities, the boundaries of which shall be co-extensive with the boundaries of such defunct cities and towns, and the said Commissioners, *and such officers as may be appointed*, and the inhabitants within the limits of

such cities and towns, shall be vested with all the *powers and authority, rights and privileges, and charged with all the duties* which are conferred on the aldermen *and other officers,* and in the inhabitants, under and by virtue of the said act to provide for the incorporation of cities and towns, approved 4th of February, A. D., 1869, and the amendments thereto," &c.  Section 8, of Chapter 3606, provided that the Commissisners shall appoint a marshal and a clerk, &c. This marshal, when appointed, under the provisions of section 6, above quoted from said act, became at once clothed and vested with all the powers and authority, rights and privileges, and stood charged with all the duties which were conferred upon the office of marshal by the provisions of the said Chapter 1688, approved February 4th, 1869, and the amendments thereto.  Thus stood the law until the approval on February 12th, 1885, of Chapter 3607, hereinbefore referred to, whereby section 8, of Chapter 3806, providing for the appointment of a marshal by the Commissioners, was entirely repealed, and whereby it was made the duty of the sheriff to perform the duties of marshal for such provisional municipality, &c.  The effect of this latter enactment was to clothe and invest the sheriff of Escambia county with all the powers and authority, rights and privileges, and he stood charged with all the duties that developed upon the office of marshal, as contemplated by the provisions of said Chapter 1688, laws of 1869, and the amendments thereto.

The next question to be considered is: What are the powers and authority, rights, privileges and duties of the office of marshal in a city or town? The answer to this question must necessarily be drawn largely from the commonly accepted usages and customs of the country, since the office of marshal of a city or town is of comparatively modern creation, unknown to the common law of England, and in our statutes, except in one instance to be referred to further on, there is no attempt at any defining of his duties. Our law makers seem to have been satisfied that simply to establish the office and gave to it a name, that then such duties, rights, powers and privileges would naturally follow in its wake that were of such nature and character as had by popular custom and usage, become known and accepted as appertaining to such an office. In Anderson's Law Dictionary, a marshal is defined to be "an officer of the peace, appointed by authority of a city or borough, who holds himself in readiness to answer such calls as falls within the general duties of a constable or sheriff." In the appendix to 53 Conn., 609, we find the following: "An executive officer for the courts was of course necessary from the beginning, but he is first mentioned in our records by the title of marshal under date January 10, 1649-50." In section 27 of Chapter 20, of the acts of Congress, approved September 24th, 1789, the executive officer of the courts of the United States is entitled "marshal;" and section 9 of Chapter 36, acts of Congress approved February 28th, 1795, provides:

"That the marshals of the several districts, and their deputies, shall have the same powers in executing the laws of the United States, as sheriffs and their deputies, in the several states, have by law, in executing the laws of the respective states." From these instances of long usage, by the people of the United States, of the title "marshal" as being synonomous with that of "sheriff," we are forced to the conclusion that when the title "city marshal," in a statute like ours, is given to a municipal office created by the statute, that it is contemplated by the statute that the officer given that title, in so far as the authority and duties of his office are concerned, occupies the same relation to the governmental affairs of the municipality as a sheriff does to his county. He is the chief executive officer of the town, clothed with authority to apprehend offenders against the ordinances of the municipality, and by the express terms of the said Chapter 3607, approved February 12th, 1885, the sheriff, who by the provisions of that act, stands in the marshal's shoes, so far as Pensacola is concerned, is given the power to appoint all policemen, subject to the approval and removal thereof by the Commissioners. The very fact that this power to appoint policemen is given to him, coupled with the generally accepted nature and character of his offence, seems to contemplate that he shall be the head or chief of the police forces of the city. The fact that the legislature, in section 25, of Chapter 1688, laws of 1869, requires the mayor to direct his mandate to the city or town mar-

shal for the apprehension of persons charged with a breach of the ordinances, show conclusively to our minds that the legislature contemplated that the city marshal should be the chief executive officer of the municipality; and so far as his powers and duties are concerned, should occupy in the municipal government the same attitude that a sheriff has in his county. And yet in the face of this last mentioned provision of our law we find that in section 3 of Article II, of Chapter V, of the said code of ordinances of Pensacola, it is provided that the mandates for the apprehension of city offenders, are required to be directed to the "Chief of Police," *eo nomine*. We are of the opinion that the duties in general that are prescribed in sections 1, 2, 3, 4, 5, 6, 7 and 8, of Division 6, of Article IV, of Chapter IV, of the code of ordinances of the municipality of Pensacola, as being the duties of the "Chief of Police," *eo nomine*, of said city; are such duties and functions as from their very nature and character belong, as the law now stands, to the office of city marshal, or in this case, as we have seen, to the relator, the sheriff of Escambia county. In the absence of any provision of law authorizing the creation of the office of "Chief of Police" in the city of Pensacola, with the functions, powers, privileges and duties that have been assigned to said office *eo nomine* by the said code of ordinances of said city, we are of the opinion that the ordinances of the said city crea-

ting the office of chief of police, and assigning to such office duties, powers, privileges and functions that, from their very nature and character, belong by law, as it now stands, to the office of sheriff, acting *ex virtute officio* as city marshal of such municipality, are *ultra vires*, illegal and void. Benjamin vs. Webster, 100 Ind., 15; Hoboken vs. Harrison, 30 N. J. Law, 73; Farrall vs. City of Bridgeport, 45 Conn., 191; White vs. Tallmah, 26 N. J. Law, 67; Tiedman's Limitations of Police Power, sec. 212. It follows from the conclusions here reached that the order of the court below sustaining the demurrer of the respondent to the amended information of the relator must be reversed, and it is so ordered, with directions that the cause be remanded to the court below with instructions for such further appropriate proceedings herein as shall be consistant with the views herein expressed.