STATE, EX REL. JOHN KLAIR AND WALTER COMER, APPLICANTS, v. HARRY BACHARACH, RESPONDENT.

Submitted March 4, 1932—Decided March 24, 1932.

Before Justices TRENCHARD, DALY and DONGES.

For the applicants, *Samuel Morris.*

For the respondent, *Merritt Lane.*

PER CURIAM.

Applicants seek leave of this court to file an information in the nature of *quo warranto,* as citizens and taxpayers, under section 1 of the *Quo Warranto* act. 3 *Comp. Stat.,* p. 4210.

The applicants assert that the respondent has for about twenty months, or since July 10th, 1930, unlawfully held, used and executed the office of a member of the board of public utility commissioners of this state. The respondent was appointed as such utility commissioner on March 23d, 1929, duly qualified and has acted since that date. A vacancy occurring by the death of Mayor Ruffu, of Atlantic City, the remaining four city commissioners elected respondent as commissioner for the unexpired term of the late Mayor Ruffu. He took oath as a commissioner of Atlantic City on July 10th, 1930, and was selected by the city commissioners as mayor on that day.

The applicants assert that, since his selection as mayor of Atlantic City, the respondent unlawfully continues in the office of utility commissioner, and assert that this is so for the following reasons:

1. By reason of the express law. *Pamph. L.* 1911, *p.* 375, § 9.

2. The two offices are incompatible.

3. By accepting the position of mayor, Mr. Bacharach forfeited his position as public utility commissioner.

The statute of 1911 (2 *Cum. Supp. Comp. Stat., p.* 2878), in the first section, provides:

"There shall be a commission vested with the powers and duties hereinafter specified, which shall consist of three persons, citizens of this state, not under thirty years of age, who shall be appointed by the governor, by and with the advice and consent of the senate, and who shall constitute and be designated and known as the board of public utility commissioners. Not more than two of said commissioners shall be members of the same political party."

Section 9 provides:

"No member or employe of said board shall have any

official or professional relation or connection with, or hold any stock or securities in, any public utility as herein defined, operating within the State of New Jersey, or hold any other office of profit or trust under the government of this state or of the United States."

It is the provision that "no member * * * shall * * * hold any other office of profit or trust under the government of this state," that applicants invoke as disqualifying the respondent.

It will be observed that the interdiction of the statute is not against the holding of any other office, or of any other public office, or of any other office of profit or trust, but against the holding of any other office of profit or trust under the government of this state. The legislature confined its prohibition to offices "under the government of this state." If the legislature had intended to exclude the holding of any other office of profit or trust, it could easily have done so by the use of appropriate language. It would have been easy to provide that the incumbent should not hold any other office, whether under the government of this state or of any municipality. It must be assumed, therefore, that the legislature intended the limitation to extend no further than the language used reasonably imports. Since the selection of respondent as a city commissoner of Atlantic City, and his designation as mayor thereof, the legislature has been in session, and, indeed, now is in session, but no one has sought to have the prohibition now urged extended in unmistakable language by legislative action.

We think there is grave doubt that the prohibition extends beyond offices that are state offices as distinguished from municipal offices. Nor are we persuaded that the office of mayor of a municipality is such an office as falls within the class designated by the statute in question. As a matter of fact, it appears that the office to which respondent was elected was that of a city commissioner. He was selected to act as mayor, but all duties are assigned to him as commissioner, and do not devolve upon him as mayor.

Applicants urge that because the mayor may be called upon

to act as police judge (which insistment is denied by respondent as a matter of fact and as a matter of law), that he thereby becomes an officer under the government of the state. It has been held that the office of a police justice or judge of a police court is a municipal office and not a state office. *Perry* v. *Bianchi*, 96 *N. J. L.* 113.

The applicants assert that, without regard to the statute, the two offices occupied by respondent are incompatible under the common law. We think there is grave doubt whether this question may be raised against respondent, in view of the legislative declaration as to what shall disqualify a member of the board of public utility commissioners. The legislature has expressly stated what other offices may not be held, and it would appear to follow that any office not falling within the designated class is to be deemed not incompatible with the office in question.

But, apart from these considerations, this court has a wide discretion in granting or withholding its permission to a desiring relator, who makes no claim to the office, in cases of this kind, even where a good objection to the title of the person whose right is called in question is shown. *Mitchell* v. *Tolan*, 33 *N. J. L.* 195; *Houseman* v. *Earle*, 98 *Id.* 379; *Mulsoff* v. *Sloat*, 8 *N. J. Mis. R.* 554; *Reihl* v. *Wynne*, 105 *N. J. L.* 507.

We are unanimously of opinion that the present case is one calling for a sound discretion resulting in a denial of the application.

There is great doubt that the applicants would be successful in the proposed effort to oust respondent. Meantime, the right of a member of an important public body to participate in the important duties assigned to that body will be in question, resulting in embarrassment and, perhaps, the slowing up of the work of the commission.

While a citizen may make such an application, we think that, in a case like this one, it would be better practice to apply first to the attorney-general to institute proceedings involving the right to hold such an important office. Particularly is this true where, as here, the applicants have per-

mitted almost twenty months to elapse before taking action, and such action is sought within two months of the expiration of the respondent's term of office as mayor. *Houseman* v. *Earle, supra; Mulsoff* v. *Sloat, supra.*

In a case of this kind, the public interest will be considered above the claim of a right asserted by a citizen to oust an incumbent of an office. Consideration of the possible damage resulting leads us to conclude that the application should be denied. There will be no costs to either party.