Doyle WILLIS, Relator,

v.

William S. POTTS et al., Respondents.

No. A–10034.

Supreme Court of Texas.

April 1, 1964.

Dissenting Opinion April 8, 1964.

Fannin & Fannin, Kenneth Spell, Fort Worth, for relator.

Thomas H. Law, Fort Worth, for respondents.

GRIFFIN, Justice.

This is a suit by Doyle Willis, relator, for mandamus against William S. Potts as Chairman of the Democratic Executive Committee of Tarrant County, the Democratic Executive Committee of Tarrant County, Don Gladden, Don Woodward and Don Kennard, as candidates for the office of State Senator of the State of Texas, asking that the Chairman and the Democratic Executive Committee be required to certify relator as a candidate for the office of State Senator and that his name be placed on the ballot for the May 2, 1964, Democratic primary election as a candidate for such office. The respondent William S. Potts, as Chairman of the Tarrant County Democratic Executive Committee, has advised relator by letter dated March 6, 1964, that relator will not be certified as a candidate, nor will his name be placed on the ballot for the May 2 Democratic primary election.

Respondent Potts in his letter and in his answer to relator's original petition for mandamus takes the position that relator cannot be certified as a candidate for the office of State Senator nor can his name be placed on the ballot for the May 2 Democratic primary because Article III, Section 19 of the State Constitution Vernon's Ann. St. makes the relator ineligible for the office of State Senator and Articles 1.05 and 1.06 of the Texas Election Code Vernon's Ann.St., prevent relator's name from being certified or placed on the ballot for the May 2 Democratic primary. His argument is that relator, having been elected to the office of City Councilman of the City of Fort Worth, for a term of office expiring in April of 1965, and beyond the time when the term of office of State Senator will begin, and which said office is *a lucrative office under this state*, is ineligible for the office of State Senator under said constitutional provision and under our holding in the case of Kirk v. Gordon et al., Tex. 1964, 376 S. W.2d 560. (Emphasis added.)

In that case we did hold that under Article III, Section 19 of the Constitution a district attorney whose term of office overlapped with the office of State Representative for which he sought to become a candidate was ineligible to the office of State Representative. In that case there was no question but that the office of district attorney is a "lucrative office under the State."

The constitutional provision, Article III, Section 19, is as follows:

"No judge of any court, Secretary of State, Attorney General, clerk of any court of record, *or any person holding a lucrative office under the United States, or this State,* or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature." (Emphasis added.)

██ Any constitutional or statutory provision which restricts the right to hold public office should be strictly construed against ineligibility.

Relator Willis, as grounds for the relief which he seeks, contends that Art. III, Sec. 19 has no application to his situation, because his office of City Councilman of the City of Fort Worth is not an (1) office "under the State" nor (2) a "lucrative" office, within the Constitutional prohibition.

Relator cites the case of Bonner v. Belsterling (1911), 104 Tex. 432, 138 S.W. 571, as one of his authorities supporting his contention that a city councilman does not hold an office "under the State." In that case the question decided was that a member of the Board of Education, created under the provisions of the Dallas Charter was not an officer of Dallas County but was an officer of the City of Dallas. No one contended that the school board member was either "an officer of the State" or "under this State." This case, therefore, is not in point. Neither is the case of Town of Sunnyvale v. Dallas County Board of School Trustees et al. (Tex.Civ.App., 1955), 283 S.W.2d 296 in point in this case.

The City of Fort Worth, Texas, is a Home Rule City, created by virtue of Art. XI, Sec. 5 of the State Constitution, and Art. 1165, Vernon's Texas Civil Statutes. Both of the above provisions limit the power of Home Rule Cities as follows:

" * * * and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State * *."

The charter of the City of Fort Worth recognizes—as it must—that the city is created under the Constitution and laws of the State of Texas as they existed in 1924 when the Home Rule Charter was adopted, and also laws "hereinafter to be enacted by the Legislature of the State of Texas."

A member of the City Council, before entering upon the duties of his office must take and subscribe to an oath or affirmation that " * * * he will support and defend the Constitution and laws of the United States and of the State of Texas * *."

Art. 1175, Vernon's Texas Civil Statutes is the source of many of the powers exercised by Home Rule Cities. The very first power set out is "[t]he creation of a commission, aldermanic or other form of government; the creation of offices, the manner and method of selecting officers and prescribing their qualifications, duties, compensation and tenure of office."

This article also authorizes such cities to provide for, and conduct many governmental activities, highways and control of traffic thereon; promote the public health and the keeping of the peace and many, many other governmental functions belonging to the state government, but which by this article are delegated to Home Rule Cities.

This Court said in Texas National Guard Armory Board v. McCraw (1939), 132 Tex. 613, 126 S.W.2d 627(23, 24):

"The State has vital interest in its cities. In its governmental capacity a city is a political subdivision of the State, and in many instances is considered as an agent of the State; and the State may use such agent in the discharge of its duties." Citing numerous authorities.

In Yett v. Cook (1926), 115 Tex. 205, 281 S.W. 837(13), we said:

"That the state has a justiciable 'interest' in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt. Municipal corporations are created for the exercise of certain functions of government. They have a two-fold character, one governmental and the other private, and, in so far as their character is governmental, they are agencies of the state, and subject to state control." Citing numerous authorities.

This case further holds the mayor of a city is a magistrate, and that the corporation court exercises state judicial power in the name of the state. Further we said:

" * * * that officers, upon whom rests the duty of administering the franchises of government confided to the city, and acting as the state's agents in custody of public property and in the performance of the state's duties as parens patriae, trustee, guardian, or

representative of all the people, should be regularly selected and installed in office in a lawful manner."

In the case of Orndorff v. State ex rel. McGill (Tex.Civ.App., 1937, writ ref.), 108 S.W.2d 206, the court stated the question to be decided as "Is a county commissioner an officer 'under the Government of the State?'" The court pointed out that "it must be borne in mind that there is a marked difference between the meaning of the phrases 'under the State Government' and 'of the State' or 'of the State Government.'" The court says that counties are created by the state for the purposes of government. Their functions are political and administrative, and the powers conferred upon them are rather duties imposed than privileges granted; that counties are subordinate to, and creatures of, the state, and therefore are "under the state government" performing duties imposed by the state. It holds that necessarily, therefore, members of the commissioners' court, the body charged with the performance of the duties imposed from above, are officers under that superior government.

The case states that this holding is in harmony with the weight of authority, and sets out cases from many jurisdictions which sustain the court's holding. Among these cases are the following having to do with offices of a city government. Attorney General ex rel. Moreland v. Common Council of City of Detroit, 112 Mich. 145, 70 N.W. 450, 37 L.R.A. 211, holding that the mayor of Detroit was an officer "under the state" of Michigan; State ex rel. Young v. Robinson, 101 Minn. 277, 112 N.W. 269, 20 L.R.A.,N.S., 1127, holding that "[o]fficers of municipal corporations * * * are, in respect to all general laws having force and operating within their municipality, agents of the state"; Wood v. Miller, 154 Ark. 318, 242 S.W. 573, holding that a municipal judge was an officer "under the state."

The court's reasoning in the Orndorff case, supra, with regard to counties applies with like effect to municipalities, i. e., Home Rule Cities.

In the beginnings of our state, cities could only be created by legislative action and the act of the Legislature prescribed the officers of the city, and their duties, and conferred upon the city and its officers governmental duties theretofore performed by the state.

Under proper constitutional and legislative sanction, it was provided that cities, towns and villages might be created under general laws passed by the Legislature. In 1913 the Home Rule amendment to our State Constitution was passed and it was implemented by the Legislature by Art. 1165, Vernon's Texas Civil Statutes, and the other provisions of what is now Chapter 13 of Title 28, Cities, Towns and Villages. The Legislature from time to time has passed laws controlling such Home Rule Cities. Such Home Rule Cities exist solely by virtue of the State Constitution and legislative enactments. These cities are therefore political and governmental subdivisions under this state.

■ Members of the City Council of Home Rule Cities in the discharge of their duties as such engage in governmental activities and exercise a portion of the sovereign powers of the State. For instance, in the matter of regulations affecting Public Health, traffic regulations, and many others. These are duties which the State owes to its citizens. It follows therefore that Members of the City Council are Officers under this state within the meaning of Art. III, Sec. 19 of our State Constitution.

Relator Willis therefore comes within this prohibition of Art. III, Sec. 19 of our State Constitution.

The Constitution, Art. III, Sec. 19, requires that in addition to relator Willis holding an office "under the state" that such office be a "lucrative" one, before he is rendered ineligible to be elected to the Legislature "during the term for which he is elected or appointed."

Chapter 3, Sec. 3 of the Charter of the City of Fort Worth provides: "Each member of the City Council shall receive as compensation for his services the sum of Ten ($10.00) Dollars per diem for each regular meeting attended by him, such compensation in no event to exceed the sum of Five Hundred and Twenty ($520.00) Dollars per annum. In addition to the above, all necessary expenses incurred by the City Council in the performance of their official duties shall be paid by the city."

Relator contends that such compensation is not "adequate compensation" for the time spent in the performance of his duties as a City Councilman, and therefore he does not hold a "lucrative office" within the constitutional prohibition. He cites the Wyoming case of Baker v. Board of Commissioners of Crook County (1900) 9 Wyo. 51, 59 P. 797, and the case of State ex rel. Platt v. Kirk, 44 Ind. 401, as so holding.

The case of Baker v. Board of Commissioners of Crook County, supra, defines a lucrative office as follows:

"What is a lucrative office seems to be very well settled upon reason and authority. Mr. Mechem says: 'An office to which salary, compensation, or fees are attached is a lucrative office, or, as it is frequently called, an "office of profit." *The amount of the salary or compensation attached is not material.* The amount attached is supposed to be an adequate compensation, and fixes the character of the office as a lucrative one, or an office of profit.' Mechem, Pub.Off. § 13." (Emphasis added.)

The court holds that the office of coroner is a lucrative one under the Wyoming statutes.

However, the court holds that even though the office of coroner is a lucrative one, the office of county physician is not an office of the county, and therefore the county physician may be appointed county coroner without violating the statutory provisions under construction. No constitutional provision was involved.

The case of State ex rel. Platt v. Kirk (1873), 44 Ind. 401, holds that a director of the Indiana State Prison may also be a city councilman within the language of a constitutional prohibition of the State of Indiana. The court says that there is no doubt but that the office of city councilman is a lucrative office. The court quotes from authorities as follows:

"An office to which there is attached a compensation for services rendered is a lucrative office. Webster defines the word lucrative to mean 'yielding lucre; gainful; profitable; making increase of money or goods; as a lucrative trade; lucrative business or office.' In Dailey v. The State [ex rel. Huffer], 8 Blackf. 329, Perkins, J., in speaking of the offices of recorder and county commissioner, said: 'We think, also, they are lucrative offices. Pay, supposed to be an adequate compensation, is affixed to the performance of their duties. We know of no other test for determining a "lucrative office" within the meaning of the constitution. The lucrativeness of an office—its net profits—does not depend upon the amount of compensation affixed to it. The expenses incident to an office with a high salary may render it less lucrative, in this latter sense, than other offices having a much lower rate of compensation.' "

The basis for the court's holding that the prison director may also be a city councilman is that a city councilman is not an officer "under the state" because, according to Indiana law and authorities, a city government is separate and distinct from the government of the state. This is contrary to the Texas holding that a city government is a subdivision of and under the state government.

Black's Law Dictionary, 4th Ed., defines "lucrative" as "yielding gain or profit, profitable bearing or yielding a revenue or sal-

ary." Black also defines a "lucrative office" as "one which yields a revenue (in the form of fees or otherwise) or a fixed salary to the incumbent; according to some authorities, one which yields a compensation supposed to be adequate to the services rendered and in excess of the expenses incidental to the office. One the pay of which is affixed to performance of duties of office."

Under the above authorities the relator holds a lucrative office.

It is undisputed that relator's terms as City Councilman, to which he was elected, will not expire until April, 1965, and that should he be successful in being elected State Senator his term would begin before April 1965.

Therefore, since he holds a lucrative office under this state, he is ineligible to serve as State Senator at the session to which he seeks to be elected. Being ineligible to serve, he cannot have his name appear on the ballot at the coming primary election May 2, 1964, as a candidate for State Senator. Arts. 1.05 and 1.06 of Election Code, State of Texas.

Relator's Application for Writ of Mandamus is refused.

No motion for rehearing will be entertained.

HAMILTON and STEAKLEY, JJ., dissenting.

STEAKLEY, Justice (dissenting).

I am preparing a dissenting opinion in Lee v. Daniels, Tex., 377 S.W.2d 618, in support of my view that the accomplished resignation of Sam Jorrie as County Commissioner of Bexar County on February 1, 1964, removed his ineligibility to the Legislature under Section 19 of Article III and Section 12 of Article XVI of the Constitution of Texas. Section 16 of Chapter XXIV of the Charter of the City of Fort Worth provides that "If a member of the Council shall become a candidate for nom-

ination or election to any public office, other than that of Councilman, he shall immediately forfeit his place in the Council; * * *."

I would hold for the reasons to be stated in the dissenting opinion mentioned above that the immediate forfeiture of the office of City Councilman by the act of Doyle Willis in becoming a candidate for the office of State Senator removed his ineligibility for the Legislature. As I view the problem, the *holding* of a disqualifying office should be recognized as the consistent criteria of ineligibility in both Section 19 of Article III and Section 12 of Article XVI; otherwise, there will exist an irreconcilable conflict between these two constitutional provisions pertaining to eligibility to the Legislature.

HAMILTON, Justice (dissenting).

I agree with the court's holding that the office of City Councilman of the City of Fort Worth is a lucrative office, but I cannot agree with the court that the City Councilman is an *officer under this state* within the meaning of Aritcle III, Section 19 of the Constitution.

A home rule city possesses powers not denied by statute or Constitution so long as the city has incorporated these powers in its charter. There are many powers which the City of Fort Worth could exercise under the Constitution and statutes, but it cannot do so because they are not contained in its charter. See Davis v. City of Taylor, 123 Tex. 29, 67 S.W.2d 1033; Zachry v. City of San Antonio, 296 S.W.2d 299 (Tex.Civ. App.1957), affirmed 157 Tex. 551, 305 S.W. 2d 558. It is the people of the City of Fort Worth through its charter who have given the City Council of Fort Worth all the powers it possesses, and herein lies the distinction between a city councilman as an officer under the city and an officer under the state. There is no statute which imposes upon the councilman any state duty above and beyond the duties placed upon him by the charter of the City of Fort Worth. His office is not created by the state, his powers

and duties are not defined by the state, neither has the state by statute placed any particular duty upon him by virtue of his office of City Councilman. Under these circumstances I would say that relator is not holding an office under this state.

The term "office under this state" as used in Article III, Section 19 of the Constitution, has never been construed by the courts of this state as applied to a municipal office, but it has been so construed by many other states. Without exception every jurisdiction has declared a municipal office not to be an *office under the state* unless it is one created by the Constitution or statutes, its powers and duties defined by statute, or an office created by some other authority such as a municipality, but upon which there is imposed by statute certain state duties.

The Supreme Court of Michigan has written an exhaustive opinion on the subject before us and has analyzed many cases in other jurisdictions, and in the opinion of the writer has verified the conclusion he has reached above. Attorney General ex rel. Moreland v. Common Council of City of Detroit, 112 Mich. 145, 70 N.W. 450, 37 L.R.A. 211 (1897) and cases cited therein.

In State ex rel. Platt v. Kirk, 44 Ind. 401 (1874) it was held that the office of City Councilman was not an "office * * * under this State." In making such holding, the Indiana Supreme Court stated as follows:

"The office of councilman is an office purely and wholly municipal in its character. He has no duties to perform under the general laws of this State. The State has enacted a law applicable to all cities which may organize under it. The inhabitants of the particular locality, after having taken the other necessary steps for an organization, elect the designated number of councilmen, who have the power to enact by-laws, and do such other acts and perform such other duties as pertain to their office in the municipality. These powers and duties of councilmen are beyond and in addition to any acts, powers, and duties performed by officers provided for under the state government." 44 Ind. at 406–407.

The Supreme Court of Missouri, in holding that a mayor of a city is not an officer under the state, stated:

"We do not regard the mayor of a city as an officer under the State within the meaning of the constitutional provision. There is a recognized distinction between State officers, whose duties concern the State at large, or the general public, although exercised within defined territorial limits, and municipal officers, whose functions relate exclusively to the particular municipality. * * * A State officer may be connected with some of the municipal functions, but he must derive his powers from a State statute and execute his powers in obedience to a State law. * * * Whilst it is true, that the State grants the charter under which a city is organized and acts, yet those elected in obedience to that charter perform strictly municipal functions, and do not act in obedience to State laws in the manner enjoined upon State officers." Britton v. Steber, 62 Mo. 370, 374 (1876).

The above holding was also applied to the office of city alderman in State at Inf. of Dalton ex rel. Tucker v. Mattingly, 268 S.W. 2d 868 (Mo.Sup.Ct.1954)

In Klair v. Bacharach, 10 N.J.Misc. 448, 159 A. 538 (1932), it was held that a City Commissioner or Mayor, although acting as judge of a police court, was not an officer "under government of this State."

The Florida Supreme Court in Attorney General ex rel. Wilkins v. Connors, 27 Fla. 329, 9 So. 7 (1891) held that municipal offices are not offices "under the government of this State."

In People v. Capuzi, 20 Ill.2d 486, 170 N.E.2d 625 (1960), it was held that the President of a Village is not an "office under * * * this State * * *."

Respondent relies on Wood v. Miller, 154 Ark. 318, 242 S.W. 573 (1922) in support of his position that a City Councilman is an officer under the State. In that case it was held that the office of judge of the municipal court of a city is a "civil officer under this State." The Arkansas court made the following statement:

"The words 'under this state,' as used in the Constitution, mean under the laws of this state, or by virtue of or in conformity with the authority conferred by the state as sovereign. It embraces all offices created by the laws of the state as contradistinguished from other authority. Municipal offices are created by the statutes of the state, and are therefore civil offices 'under this state.' "

That case is distinguished from the case before us in that in Arkansas municipal offices are created by the statutes of the state as "contradistinguished from other authority". The other authority in the instant case is the charter of the City of Fort Worth, which created the office of City Councilman.

Respondent relies on Attorney General ex rel. Moreland v. Common Council of City of Detroit, supra, and State ex rel. Young v. Robinson, 101 Minn. 277, 112 N.W. 269, 20 L.R.A.,N.S., 1127 (1907), along with language by this court in Yett v. Cook, 115 Tex. 205, 281 S.W. 837 (1926).

While it was held in Attorney General ex rel. Moreland v. Common Council of City of Detroit that the office of Mayor was an office "under * * * this State", the Supreme Court of Michigan did recognize that municipal officers "whose duties are simply and purely municipal, and who has no function pertaining to state affairs, does not come within the constitutional description of officers holding office under the state". That court based its decision on the fact that a mayor was a conservator of the peace in common with all magistrates and that the legislature had placed general duties under state law on mayors of municipalities.

State ex rel. Young v. Robinson, supra, is based on a similar proposition. That case involved the right of the Attorney General of Minnesota to bring a suit to remove a person from the office of mayor of a municipality. The court held him to have such right, such holding being based on the fact that in Minnesota the mayor was required by state law to report all violations of the state liquor laws and any neglect of duty by a mayor was made cause for removal.

In Yett v. Cook, supra, it was stated by this court, and respondent relies thereon:

"That the state has a justiciable 'interest' in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt. Municipal corporations are created for the exercise of certain functions of government. They have a two-fold character, one governmental and the other private, and, in so far as their character is governmental, they are agencies of the state, and subject to state control." (citing authorities.)

"The mayor of a city is a magistrate, and its police officers are state officers." (citing authorities.)

The holding of the court was that individuals in their private capacity did not have a justiciable interest other than as a member of the general public, hence could not compel calling of city election. In using the above language, this court was merely holding that the State was the proper party to bring suit to compel a municipal election. That case did not pass on whether a city councilman is an officer under the State as used in Article III, Section 19 of the State Constitution. A municipal officer may be an officer under the State when the statute placed certain duties on him which he is bound to enforce. For example, a municipal police officer may be said to be an officer under the State, since he has the duty, made so by statute, to enforce the general criminal laws of the State. See Articles 36 and 37, Vernon's Ann.C.C.P.

The court also relies strongly on the case of Orndorff v. State (Tex.Civ.App., 1937, writ ref.), 108 S.W.2d 206, in which the court held that a county commissioner was an officer under the government of the state. That case is not contrary to the test that has been set out above. The office of county commissioner was created by the state. Its duties and powers are set by statute and the counties themselves are created by the state without regard to the wishes of the people therein residing.

I agree with the statement in this court's opinion in this case that "Any constitutional or statutory provision which restricts the right to hold public office should be strictly construed against ineligibility." In keeping with that premise, I would hold that a city councilman of the City of Fort Worth is not an officer under this state and I would grant relator's application for writ of mandamus.