

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 21, 1970

Dr. J. W. Edgar
Commissioner of Education
Texas Education Agency
201 East 11th Street
Austin, Texas 78711

Opinion No. M- 712

Re: Whether Section 2.08 of the
Texas Education Code is ap-
plicable to a school trustee
who is employed with a text-
book publishing company sell-
ing textbooks in Texas.

Dear Dr. Edgar:

We quote a portion of your letter requesting our opinion, as follows:

"At the school trustee election held in the Eanes Independent School District on April 4, 1970, Mr. Martin D. Tenney was elected one of the trustees of the district. Shortly thereafter he took the oath of office and continues now to serve as trustee."

In your statement of facts you recite that Mr. Tenney is the Southwest Regional Editor for Prentice-Hall, Inc., which is a publishing company, and that Prentice-Hall, Inc. has contracts to furnish textbooks to the State of Texas.

In your letter you ask the following question:

"Does the provision of Section 2.08 T.E.C.* and the employment of a school trustee (Mr. Tenney) by a textbook publishing company selling textbooks in Texas render him ineligible to hold the office or to serve as a trustee of a school district (Eanes I.S.D.)? (Emphasis supplied)."

Additional uncontroverted facts have been furnished in the form of an uncontroverted affidavit by Mr. Tenney which reads, in part, as follows:

"I am a salaried employee of Prentice Hall, Inc., of Englewood Cliffs, New Jersey, a large

*Section 2.08, Texas Education Code.

-3439-

publishing house deriving its principal income
from its loose-leaf services to the legal pro-
fession and to business.

"I was a salaried employee of Prentice-Hall,
Inc. when I ran for the office of Trustee of the
Eanes Independent School District, and I made full
disclosure of this employment during my election
campaign. This fact was known to the voters, the
then Board of Trustees, and the administration of
the Eanes Independent School District when I was
running for the office of Trustee, when I was elected
by a majority of the electors of the district, when
I was declared the winner of the office of Trustee
for which I sought election, when I qualified for the
office and when I took the oath of office as Trustee,
and daily thereafter from April, 1970, until the
present time. I have not attempted to hide the fact
that I was then and am now solely a salaried employee
of Prentice-Hall, Inc.

"During the period of time hereinabove delineated
and during the present time, I have not then, nor do I
now, own any shares of stock in Prentice-Hall, Inc., nor
in any of its subsidiaries.

"My job title with Prentice-Hall, Inc. is Regional
Editor. As Regional Editor, I have no employees of said
company directly or indirectly under my supervision. I
am not an officer in said company, nor am I a General
Manager, nor am I a Regional Manager. My employment
is solely with Prentice-Hall, Inc.

"I do not sell books. My job is to contact
College Professors with the view in mind to procure
manuscripts that may subsequently be published by
Prentice-Hall, Inc. I do not have the power or au-
thority, expressed or implied or apparent, to bind
the said corporation on any contract or to sign or
execute a contract for and on behalf of said cor-
poration. All contracts can only be signed by an
officer of the company. I cannot agree with some
third person that the corporation for which I work
will publish his book or manuscript.

"I have no contact in the performance of my
employment with School Administrators in Texas, at
the High School or Elementary School level.

"I have no power nor authority for and on be-
half of Prentice-Hall, Inc., to:

"(a)  institute legal proceedings for and on
behalf of the company;

"(b)  to sell real or personal property of the
company for and on behalf of the company;

"(c)  to execute contracts for and on behalf of
the company;

"(d)  to ratify contracts for and on behalf of
the company;

"(e)  to supervise or manage any other employee
of the company;

"(f)  to supervise or manage any officer of the
company;

"(g)  to buy real or personal property for and
on behalf of the company;

"(h)  to receive the proceeds of any sale for
and on behalf of the company;

"(i)  to borrow money for and on behalf of the
company;

"(j)  to mortgage or encumber real or personal
property for and on behalf of the company;

"(k)  to hire or fire an officer or employee of
the company;

"(l)  to assent to an account stated for and on
behalf of the company.

"My employer regularly withholds United States
Income Tax and Social Security taxes from my salary."

After we were furnished a copy of this affidavit, we re-
ceived a letter from the Attorney for the School Board which was
directed toward establishing that Mr. Tenney might be considered an
agent of Prentice-Hall, Inc.  The only additional fact presented is
that Mr. Tenney is responsible for developing or editing manuscripts
into college texts; however, we have been furnished no evidence of

-3441-

Mr. Tenney acting as an agent or being authorized to act as an agent for his company. He is admittedly not an attorney. We have been advised by him he has no written contract of employment with his employer and no written or verbal authority to act as agent or attorney from his employer. The mere fact standing alone that he is responsible for development of manuscripts into college texts and contacts various college professors with the object of bringing about an ultimate procurement of manuscripts on the part of Prentice-Hall, Inc. is insufficient to present a question of fact that Mr. Tenney is an "agent" of the company. As previously shown, he has no authority to contract for or bind the company by contract.

In view of the foregoing facts presented to us, all of which are uncontroverted, our opinion is that Mr. Tenney is an employee of Prentice-Hall, Inc., and is not an agent of that company. Conflicting inferences cannot be drawn from the evidence presented to us and which has not been controverted. Winters v. Morgan & Williams, 256 S.W. 342 (Tex.Civ.App. 1923, no writ), holding that where evidence showing lack of agency is not contradicted, the jury cannot reject it and find to the contrary; that the law never presumes agency.

Our opinion is that the clear language of the Texas Education Code applies only to agents and attorneys, as therein stated, and this section may not be construed to apply to Mr. Tenney as a mere employee of a textbook publishing company.

In our construction of the statutes, we begin with the proposition that any statutory provision "which restricts the right to hold public office should be strictly construed against ineligibility." Willis v. Potts, 377 S.W.2d 622, 623 (Tex.Sup. 1964).

In 1927, the Legislature enacted Article 2840, Vernon's Civil Statutes, providing that members of the State Textbook Committee must file an affidavit before entering upon their duties. . . "that he is not and has not been directly or indirectly interested in or connected with or employed by any publishing house, person, firm or corporation submitting any books for adoption." (Emphasis ours.)

In 1935, however, the Legislature provided only that School Board of Trustees, teachers, and other school trustees shall not accept the "agency or attorneyship of any textbook publishing company." Article 2910, V.C.S.

In 1969, the Legislature enacted the Texas Education Code, repealing Article 2840 and bringing forward the same stringent language in Section 12.11, while also repealing Article 2910 and bringing forward the less stringent language in Section 2.08 of the Code.

It would appear that the Legislature understands the distinctions between an agent and an employee, and when they desire to provide for more stringent prohibitions they have done so with appropriate language. This is also evidenced in Section 23.75 of the Education Code, wherein the Legislature made provision against the members of the Board of Trustees voting on the award of a depository contract if the member is ". . . either a stockholder, officer, director, or employee of the bank receiving said school district depository contract." (Emphasis ours.)

Section 2.08 of the Texas Education Code reads as follows:

"During the term of his employment, a trustee or teacher in any public school or institution of higher learning in Texas, county or city superintendent, university president, or college president shall not act as agent or attorney for any textbook publishing company selling textbooks in Texas. Acceptance of the agency or attorneyship shall by operation of law forfeit his position with the public schools."

Since Mr. Tenney's job title of Regional Editor is not fully descriptive of all his duties, we must examine and consider all the facts presented to us to determine his legal status in his employment as being an agent, attorney, employee, or other status.

Article 2910, Vernon's Civil Statutes (now repealed), was the immediate predecessor of Section 2.08, Texas Education Code, and the two are substantially identical in the context of the question under consideration. Section 2.08 is penal in nature; it involves a forfeiture, which is not favored. Therefore, it should be strictly construed, and any reasonable doubt will be resolved against its enforcement. 25 Tex.Jur.2d 511, Forfeitures, Sec. 10, and cases cited.

We find no court decisions construing either Article 2910 or Section 2.08. However, under Article 2910 a question did arise which involved the Austin Independent School District which was the subject of Attorney General's Opinion No. 0-5231 (1943). The question was whether a stockholder, the general manager, and vice-president of the Steck Company, which held several contracts for textbook publication, was eligible for the position of trustee of the school district. The opinion concluded that a "general manager" was synonymous with "general agent" and was therefore disqualified to hold the position of trustee under Article 2910, Vernon's Civil Statutes.

We have concluded, however, that there is a material legal distinction which must be drawn between the position of a general manager and that of a mere employee, which Mr. Tenney apparently holds.

Article 10, Vernon's Civil Statutes, reads, in part, as follows:

"The following rules shall govern the con-struction of all civil statutory enactments:

"1. The ordinary signification shall be ap-plied to words, except words of art or words con-nected with a particular trade or subject matter, when they shall have the signification attached to them by experts in such art or trade, with reference to such subject matter.

". . .

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy."

It is pertinent to note that the choice of persons, "agent or attorney", to which Article 2910 applied remained un-changed in the Section 2.08 of the Education Code. The Legislature is presumed to have used words in the sense in which they are or-dinarily understood. Calvert v. Austin Laundry & Dry Cleaning, 365 S.W.2d 232 (Tex.Civ.App. 1963, writ ref.) In Fort Worth Lloyds v. Mills, 213 S.W.2d 565 (Tex.Civ.App. 1948, writ ref.), the court discussed whether the term "subcontractor", as used in the work-men's compensation statute, also included "independent contractor" and, at page 568, stated, in part, as follows:

"Moreover, the Legislature, in choosing the wording it so passed this amended Act under, was presumed to be aware of and to be applying those classifications and adjudicated meanings." (Emphasis ours.)

The distinction between an agent and an employee is set out in 2 Tex.Jur.2d 439, Agency, Section 4, as follows:

"The chief distinction between an agent and a servant lies in the fact that an agent is em-ployed to represent his principal in business

-3444-

dealings and to establish contracted relations
between him and third persons, while the servant
is not, nor is he allowed the use of personal dis-
cretion as to the means of accomplishing the ends
for which he is employed. As the distinction is
otherwise stated, a servant is a worker for another
who ordinarily deals with things, having no power
to bring about contracted relations with third per-
sons. On the other hand, an agent is one who deals
not only with things, but also with persons, using
his own discretion as to the means employed and fre-
quently establishing contractual relations between
his principal and third persons."

(citing Gulf Ref.Co. v. Shirley, 99 S.W.2d 613
(Tex.Civ.App. 1936, err.dism.); Talley v. Sharton
Oil Co., 146 S.W.2d 803 (Tex.Civ.App. 1940, no writ);
Humble Oil & Ref. Co. v. Bell, 172 S.W.2d 800 (Tex.
Civ.App. 1943, no writ).

We therefore hold that the terms "agent" and "attorney", as used
in Section 2.08 of the Texas Education Code, do not include a mere
employee, such as Mr. Tenney apparently is.

The only court decisions we find, or cited to us, which
are directly or closely in point on the facts, are Pittston City
School District's Directors, 6 Penn.Dist. & Co. Rept. 545 (1924)
and Commonwealth, ex rel. v. Ilgenfritz, 26 Penn.Dist. & Co. Rept.
418 (1936). In the Pittston case the court held that a local public
school trustee who was the stated salary agent of a large supplier
of public school textbooks was not disqualified as such trustee
under a statute which read:

"No person shall act as agent for school books
or school supplies in any district in which he is
engaged or employed as superintendent, teacher or
employee of the school district in any capacity."

The geographical area in which the trustee served as agent did not
include the school district; a different representative of the text-
book company served the area in which the school district was located
and contacted the school for its textbooks furnished by the company.
The Court did state, however,

"On account of his business relations with
Heath & Co. and his connected self-interest, he
should not have voted on any proposition to buy
or pay for their textbooks, . . ." (at p. 549).

In the <u>Ilgenfritz</u> case the question was whether a public school trustee who was an employee of a utility company which furnished electricity and light bulbs to his school had either a direct or indirect interest in the contracts for those items. The Court held that he did not have. It held that no evidence was presented to show that the school trustee had any authority whatever to make any contract for his employer or to show that he benefited either directly or indirectly because the company of which he was an employee sold electric current and light bulbs to the school board. The Court cited the earlier case of Commonwealth, ex rel. v. Wineman, 21 Dist. R. 911 (likewise a Penn. case) which held that a councilman who was merely an employee of a water company which furnished water to his borough was not holding his office in violation of the same statute.

The contention has been advanced that Mr. Tenney may be the agent of the company for limited purposes and that his presence as a member of the School Board could raise a question of conflict of interest when the Board considers and acts to select textbooks, in view of the fact that his employer does have textbooks on the adopted list of textbooks for the public schools in Texas. We have been presented no evidence that Mr. Tenney has been given any power to establish contractual relations for his employer with third persons nor that Mr. Tenney represents his employer in any other capacity in contacts with the school board of which Mr. Tenney is a member.

In 3 American Jurisprudence 428, Agency, Section 17, the settled rules are well stated :

"Agency is ordinarily a relation created by agreement of the parties, and, as between principal and agent, an agency is created and authority is actually conferred very much as a contract is made, to the extent that the creation results from the agreement between the principal and agent that such a relation shall exist. As between the parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency. . . . "

Whether an agency has been created is ordinarily a question of fact to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention. 3 Am.Jur.2d 430, Agency, Sec. 21. Consequently, we can only pass upon the factual evidence presented to us.

Whether a conflict of interest exists between Mr. Tenney's service as a member of the Board of Trustees and his employment by Prentice-Hall, Inc. depends primarily upon the duties and authorities vested in him by his employer. If Mr. Tenney may exercise "executive authority" on behalf of his employer, his service on the Board of Trustees might be unlawful in that this service might present a conflict of interest with his employment by Prentice-Hall, Inc. Attorney General's Opinion No. O-7514 (1946). However, to be disqualified for interest, he must stand to gain or lose something, the value of which may be estimated. To present a conflict of interest, the interest must be a direct, real, and certain interest in the subject matter to be passed upon, not merely an indirect, incidental, remote, or contingent interest. Attorney General's Opinion M-625 (1970). From the facts before us, we conclude as a matter of law, that as a mere salaried employee or servant, Mr. Tenney is eligible to serve on the School Board.

The general principles governing the eligibility of public officers ordinarily apply in the case of school officers, who are public officers. 47 Am.Jur. 317, Schools, Sec. 31.

Since statutes imposing disqualifications are to be construed strictly, ambiguities, if any are to be resolved in favor of eligibility to office. 42 Am.Jur. 908, Public Officers, Sec. 37. This text further states:

> ". . . the right to hold office is a valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of the law. It is the sovereign right of the people to select their own officers. If this rule permits too much latitude, then the question of eligibility cannot be corrected by the courts, but must be by the legislature in whom the power is reposed. . . ."

## S U M M A R Y

The prohibitions of Section 2.08 of the Texas Education Code do not apply to a mere "employee" who is employed with a textbook publishing company selling textbooks in Texas, and he is not ineligible to serve as an electee on a public school board.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Melvin E. Corley
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Gilbert Pena
Tom Bullington
Jim Swearingen
S. J. Aronson

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant