**Affirmed as Modified in Part; Reversed and Remanded in Part and Opinion filed April 17, 2025.**



In The

# Fifteenth Court of Appeals

---

### NO. 15-24-00084-CV

---

**THE STATE OF TEXAS, BY AND THROUGH THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellant**

**V.**

**CITY OF SAN MARCOS; JANE HUGHSON, MAYOR OF SAN MARCOS; MATTHEW MENDOZA, SAUL GONZALES, ALYSSA GARZA, SHANE SCOTT, LORENZO GONZALEZ, AND AMANDA RODRIGUEZ, MEMBERS OF THE CITY COUNCIL OF SAN MARCOS; STEPHANIE REYES, CITY MANAGER OF SAN MARCOS; AND STAN STANDRIDGE, CHIEF OF POLICE OF SAN MARCOS; IN THEIR OFFICIAL CAPACITIES, Appellees**

---

**On Appeal from the 207th District Court
Hays County, Texas
Trial Court Cause No. 24-0267**

---

## OPINION

A fundamental principle of Texas constitutional law is that state law preempts contrary city ordinances. Tex. Const. art. XI, § 5(a) ("[N]o . . . ordinance passed

under [a city] charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State."). The Texas Local Government Code prohibits the "governing body of a municipality, . . . municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney" from "adopt[ing] a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law." Tex. Loc. Gov't Code § 370.003. San Marcos, however, has passed a local ordinance prohibiting its police officers from issuing citations and making arrests for certain low level marijuana offenses.

The State of Texas sued the City of San Marcos and various City officials under the Uniform Declaratory Judgment Act (UDJA) for a declaration that state law preempts the ordinance and for injunctive relief. In two issues, the State of Texas appeals the trial court's dismissal of its suit for lack of jurisdiction and the trial court's denial of the State's request for a temporary injunction. We hold that Appellees, with the exception of Stephanie Reyes, the City Manager, are not immune from the State's declaratory judgment action. We further hold that the trial court abused its discretion in denying some—but not all—of the relief sought in the State's request for a temporary injunction, and we remand for entry of an appropriate temporary injunction.

## BACKGROUND

San Marcos's City Charter reserves for the people of the city the "power of direct legislation by initiative" to "propose any ordinance or repeal any ordinance not in conflict with this Charter, the State Constitution, or the state laws." Through a ballot initiative process, the citizens of the City of San Marcos placed Proposition A on the November 8, 2022 general election ballot. After the voters approved the proposition with 81.86 percent voting in favor, the City Council canvassed and

confirmed the vote totals.

The City of San Marcos, through its City Council, then codified and published the ordinance as Article 4, Section 54.101–.107 of the city ordinances (the Ordinance). In pertinent part, the Ordinance reads as follows:

Sec. 54.101. – Ending citations and arrests for misdemeanor possession of marijuana.

(a) San Marcos police officers shall not issue citations or make arrests for class A or class B misdemeanor possession of marijuana offenses, except in the limited circumstances described in subsection (b).

(b) The only circumstances in which San Marcos police officers are permitted to issue citations or make arrests for class A or class B misdemeanor possession of marijuana are when such citations or arrests are part of (1) the investigation of a felony level narcotics case that has been designated as a high priority investigation by [a] San Marcos police commander, assistant chief of police, or chief of police; and/or (2) the investigation of a violent felony.

(c) In every instance other than those described in subsection (b), if a San Marcos police officer has probable cause to believe that a substance is marijuana, an officer may seize the marijuana. If the officer seizes the marijuana, they must write a detailed report and release the individual if possession of marijuana is the sole charge.

(d) San Marcos police officers shall not issue any charge for possession of marijuana unless it meets one or both of the factors described in subsection (b).

The Ordinance further restricts (1) issuance of citations for possession of "drug residue" or drug paraphernalia; (2) use of city funds to test the level of tetrahydrocannabinol (THC) of cannabis; and (3) the use of the odor of marijuana or hemp as probable cause for search or seizure. The Ordinance requires the City Manager and Police Chief to ensure that San Marcos police officers receive training concerning the provisions of the Ordinance. The Ordinance states that any San Marcos police officer found in violation of the Ordinance may be subjected to

3

discipline as provided by the Local Government Code or city policy. The Ordinance also requires the City Manager or their designee to present to the City Council a report concerning the City's implementation of the Ordinance.

After the City Council "considered, approved, and adopted" the Ordinance, Chief of Police Stan Standridge issued a "Memorandum Regarding Misdemeanor Marijuana Enforcement" (Memorandum) to provide guidance regarding the Ordinance to police employees. The Police Chief noted that the Ordinance does not "discriminate based on age, so it presumably exempts juveniles found to be in possession of marijuana," and instructed officers to investigate potential felonies for certain amounts of marijuana possessed in drug free zones or in other circumstances.

Continuing, the Memorandum stated that although "Texas law has long considered the odor of marijuana sufficient to constitute probable cause to search a person . . . If a misdemeanor amount of marijuana is solely discovered, the voter-approved ordinance would not permit officers to issue citations or make arrests." As to police officer discipline, the Memorandum quoted the Ordinance stating that a police officer may be subject to discipline for violating the Ordinance.

The Police Chief later reported to the City Council that despite recognizing that the Ordinance was in "conflict with State law ([Tex. Local Govt Code] Sec. 370.003)" the Police Department nonetheless "operated in compliance with [the Ordinance]."

The State of Texas filed suit for declaratory judgment and injunctive relief against the City of San Marcos, its Mayor and City Council members, its City Manager, and its Police Chief.[1] The State asserted claims under the UDJA and the *ultra vires* doctrine, alleging that the adoption and enforcement of the Ordinance

---

[1] The State sued the individuals in their official capacities.

violated Article XI, section 5 of the Texas Constitution and Section 370.003 of the Local Government Code. The State further sought a temporary injunction to preserve the status quo while its claims proceeded and asked the trial court to issue a declaratory judgment that the Ordinance and any corresponding police department general order or directive are *ultra vires* and void.

Specifically, the State alleged the Ordinance conflicts with Section 370.003 of the Local Government Code:

> The governing body of a municipality, the commissioners court of a county, or a sheriff, municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney may not adopt a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law.[2]

Tex. Loc. Gov't Code § 370.003.

Appellees filed a plea to the jurisdiction in which they asserted the trial court lacked jurisdiction over the State's claims. Appellees asserted that governmental immunity shielded the City from suit and the individually named City Officials were protected by governmental immunity. Specifically, Appellees asserted the State had not pleaded a viable constitutional claim under the UDJA because the State could not meet its burden to demonstrate that Section 370.003 of the Local Government Code preempts or conflicts with the Ordinance. Appellees further asserted that the State did not adequately plead an *ultra vires* claim against the individual defendants because the State identified no unlawful act taken by the individuals. Appellees alleged the Ordinance was passed by the voters of San Marcos without any action

---

[2] Possession of between two and four ounces of marijuana is a Class A misdemeanor and possession of less than two ounces is a Class B misdemeanor. Tex. Health & Safety Code § 481.121. Possession of drug paraphernalia is a Class C misdemeanor. Tex. Health & Safety Code § 481.125(d).

by City Officials. Appellees further asserted that Section 370.003 prohibits a governing body from adopting a policy to "fully enforce" drug laws. According to Appellees, because neither the City Council, nor the Police Chief, have adopted a policy not to fully enforce drug laws, Appellees have not violated Section 370.003 or the Texas Constitution.

At a hearing on Appellees' plea to the jurisdiction and the State's application for temporary injunction, Police Chief Standridge testified that he was the final arbiter of policy for the San Marcos Police Department. He acknowledged that his policy-making authority prohibited promulgation of any policy that would conflict with the City's charter, the Constitution, or state law. Before the Ordinance was adopted, the City of San Marcos had adopted a "cite and release" procedure for low level marijuana possession.[3] Standridge explained that he wrote the Memorandum to inform police officers of the Ordinance's language and to provide guidance on how to proceed under the Ordinance. Because the cite and release practice was still in force in Hays County, Standridge wanted to clarify to police officers that the Ordinance no longer allowed a citation to be issued for misdemeanor amounts of marijuana.

Standridge testified that no other law enforcement agency in Hays County follows a similar procedure to that required by the Ordinance. Standridge opined that the Ordinance conflicts with Local Government Code Section 370.003. However, San Marcos police officers are not permitted to ignore the Ordinance. If police officers ignore the Ordinance, they could be subject to disciplinary proceedings. Standridge did not believe he had the authority to issue a directive telling police officers they did not have to comply with the Ordinance.

---

[3] Peace officers may issue a citation instead of taking a person before a magistrate if a person is accused of committing a Class C misdemeanor. Tex. Code Crim. Pro. art. 14.06(b).

6

Following the hearing, the trial court granted the Appellees' plea to the jurisdiction and denied the State's application for temporary injunction.

**ANALYSIS**

In two issues, the State challenges (1) whether Appellees have immunity from the State's UDJA action challenging the City's adoption and implementation of the Ordinance; and (2) whether the trial court abused its discretion in denying the State's request for temporary injunction.

## I.   Standard of Review

A plea questioning the trial court's jurisdiction raises a question of law, which is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id*. at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When a "jurisdictional challenge implicates the merits of the [plaintiff's] cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists." *Miranda,* 133 S.W.3d at 227. In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The plaintiff has the burden to adduce evidence to "raise a fact question on the jurisdictional issue." *Id.* The evidence is reviewed in the

light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

We review an order denying a temporary injunction for abuse of discretion. *State v. Hollins*, 620 S.W.3d 400, 405 (Tex. 2020). A failure by the trial court, however, to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "To establish its right to a temporary injunction, the State must 'prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim.'" *Hollins*, 620 S.W.3d at 405 (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). We review an order denying a temporary injunction for abuse of discretion, mindful that the lower court has "'"no discretion to determine what the law is.'" *Id.* (*quoting In re Francis*, 186 S.W.3d 534, 538 (Tex. 2006) (orig. proceeding)).

## II. Dismissal of UDJA Claim Against the City

In its first issue, the State of Texas argues that the trial court erred by dismissing its UDJA claim against the City of San Marcos because the City has no governmental immunity from a claim to declare an ordinance preempted. The UDJA contains a waiver of immunity from suit "[i]n any proceeding that involves the validity of a municipal ordinance or franchise" and requires that "the municipality must be made a party and is entitled to be heard[.]" Tex. Civ. Prac. & Rem. Code § 37.006(b). Where, as here, the Legislature requires that the City be joined in a lawsuit for which "immunity would otherwise attach," the Legislature has intentionally waived the City's governmental immunity. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003); *City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 n.6 (Tex. 2009) ("For claims challenging the validity of ordinances

or statutes . . . the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity.").

The City acknowledges this general rule but defends the dismissal on the ground that the State's UDJA claim is not viable. Although the UDJA generally waives immunity for declaratory judgment claims challenging the validity of ordinances, the Texas Supreme Court has recognized that immunity from suit is not waived if the claim challenging the law or ordinance is invalid. *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 698 (Tex. 2022); *Klumb v. Houston Mun. Emps. Pension Sys*., 458 S.W.3d 1, 13 (Tex. 2015)). Accordingly, we first determine whether the State's UJDA claim is invalid in order to resolve the issue.

Ordinarily, when reviewing a plea to the jurisdiction, we delve no further than necessary into the merits to dispel notions that the State's preemption claim is implausible. *See Klumb*, 458 S.W.3d at 13. But here, we are also reviewing the trial court's denial of the State's request for a temporary injunction. This latter inquiry requires us to determine whether the State demonstrated a "probable right to relief" on its preemption theory—a question that involves a deeper merits inquiry. *Hollins*, 620 S.W.3d at 405. For convenience, we analyze both questions together.

## A. Principles of Preemption

It is undisputed that the City of San Marcos is a home-rule municipality. As a home-rule municipality, the City of San Marcos possesses the "full power of local self-government." Tex. Loc. Gov't Code § 51.072(a). But that power is not unlimited. Article XI, Section 5(a) of the Texas Constitution provides that home-rule city ordinances must not "contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5(a). Although home-rule cities have all powers not

9

denied by federal law, the Constitution, or state law, and thus need not look to the Legislature for grants of authority, the Legislature can limit or withdraw that power by general law. *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). On any given issue, choosing whether uniform statewide regulation or nonregulation is preferable to a patchwork of local regulations ultimately "is the Legislature's prerogative." *City of Laredo v. Laredo Merchs. Ass'n,* 550 S.W.3d 586, 592–93 (Tex. 2018).

To win a preemption claim, the party asserting preemption must prove that state law preempts the local ordinance. *City of Houston v. Houston Pro. Fire Fighters' Ass'n, Local 341*, 664 S.W.3d 790, 804 (Tex. 2023). To preempt an ordinance of a home-rule city, the "Legislature must demonstrate its intent to preempt local law 'with unmistakable clarity.'" *Id.* (quoting *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993); *see also City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex. 1964). If the statute makes that legislative intent clear, then the local ordinance "is unenforceable to the extent it conflicts with the state statute." *Id*. Where a conflict is present, local regulations that are "inconsistent with a statutory standard are not saved from preemption merely because some applications produce consistent results." *Id.* at 806.

## B.    Statutory Construction

Examining the Ordinance and the relevant provision of the Texas Local Government Code, we conclude that the State's UDJA preemption claim is not invalid. On the contrary, the State has demonstrated a probable right to relief on that claim. *See infra*, Part IV. B.

We review issues of statutory construction de novo. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). Our objective in construing a statute is to determine and give effect to the Legislature's intent, and

we begin by examining the plain meaning of the language used in the statute. *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). "A statute's unambiguous language controls." *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 261 (Tex. 2018).

The State contends that Sections 54.101 through 54.107 of the Ordinance are preempted:

> (1) Section 54.101 prohibiting San Marcos police officers from issuing citations or making arrests for Class A or Class B misdemeanor possession of marijuana;
>
> (2) Section 54.102 prohibiting San Marcos police officers from issuing Class C misdemeanor citations for possession of drug residue[4] or drug paraphernalia in lieu of a marijuana charge;
>
> (3) Section 54.103 prohibiting use of city funds and personnel to request, conduct, or obtain THC testing;
>
> (4) Section 54.105 requiring San Marcos police officers to receive adequate training concerning each provision of the Ordinance;
>
> (5) Section 54.106 permitting San Marcos police officers to be disciplined for failure to comply with the Ordinance; and
>
> (6) Section 54.107 requiring the City Manager to submit regular reports to the City Council concerning implementation of the Ordinance.

In this case, legislative intent to preempt local policy is unmistakably clear. Section 370.003 states that "[t]he governing body of a municipality, . . . may not adopt a policy under which the entity will not fully enforce laws relating to drugs[.]" Tex. Loc. Gov't Code § 370.003. The issue is whether the Ordinance falls within the ambit of the statute. *See In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (orig. proceeding) (stating that an ordinance is preempted only "to the extent it conflicts with the state statute"). To decide that, we look to the statutory text and the ordinary

---

[4] The Health and Safety Code does not contain a provision prohibiting possession of "drug residue."

meanings of its words. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

In 1997, the Texas Legislature enacted Section 370.003 of the Local Government Code, prohibiting various entities—including the "governing body of a municipality"—from adopting "a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law." Tex. Loc. Gov't Code § 370.003. This is not a mandate that local governments actually enforce all laws related to drugs. Rather, the statute prohibits local governments from putting up any *barrier* to the full enforcement of drug-related laws. Texas law gives local governments and law enforcement officers a panoply of tools—such as the authority to issue citations and arrests—to enforce drug laws. Section 370.003 prohibits the City of San Marcos from making a policy that takes any of those tools off the table.

Applying the plain meaning of Section 370.003, we hold that the Legislature's intent to preempt the Ordinance is unmistakably clear. Marijuana offenses are defined in Chapter 481 of the Health and Safety Code. *See, e.g.*, Tex. Health & Safety Code § 481.120 (delivery of marijuana); Tex. Health & Safety Code § 481.121 (possession of marijuana). The Ordinance's stated purpose is to "[e]nd citations and arrests for misdemeanor possession of marijuana." Texas law authorizes police officers to issue citations and make arrests for Chapter 481 offenses, but Ordinance Section 54.101 prohibits them from doing so. *See* Tex. Health & Safety Code § 481.120-.122. Texas law also authorizes police officers to issue citations and make arrests for Class C misdemeanor citations for possession of drug paraphernalia in lieu of a marijuana charge, but Ordinance Section 54.102

12

prevents them from doing so. Tex. Health & Safety Code 481.125(a), (d). Texas law gives cities the power to use city funds and personnel to request, conduct, or obtain THC testing, but Ordinance Section 54.103 prevents them from doing so. *See* Tex. Loc. Gov't Code § 51.072 (giving municipality full power of local self-government); Tex. Loc. Gov't Code § 101.002 ("municipality may manage and control the finances of the municipality"). All of these Ordinance prohibitions are barriers to the full enforcement of Texas drug laws and thus conflict with Local Government Code Section 370.003. Sections 105-107 of the Ordinance effectuate the provisions of the Ordinance that conflict with Section 370.003 and thus are preempted as well.

The City attempts to refute the State's preemption claim with several arguments, which we address in turn.

### 1.     Express Preemption of an Ordinance.

The City first argues that Section 370.003 does not contain language that demonstrates the Legislature's intent to preempt local law with "unmistakable clarity" because it bars the governing body of a municipality from "adopt[ing] a policy"—as opposed to an "ordinance"—under which the entity will not fully enforce laws relating to drugs. The City argues that if a state statute "expressly preempted" the City from "enact[ing] an ordinance," the Ordinance would be preempted. According to the City, an ordinance is not policy, so its Ordinance is not in conflict with Section 370.003.

We interpret statutes by discerning the "*fair meaning* of the text, not 'the hyperliteral meaning of each word in the text.'" *In re Dallas County*, 697 S.W.3d 142, 158 (Tex. 2024) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 356 (2012)) (emphasis in original). The Legislature's use of the term "policy" fairly encompasses an ordinance. After all, the Texas Supreme Court has recognized that "[]statutes and ordinances express the

13

public policy of the state as it existed at the time of their adoption." *State v. City of Austin*, 331 S.W.2d 737, 741 (Tex. 1960); *see also Fairfield Ins. Co. v. Stephens Martin Paving, LP,* 246 S.W.3d 653, 673 n.11 (Tex. 2008) (Hecht, J. concurring); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000) ("[C]ommentators have defined legislative power as the power to make rules and determine public policy."). In this case, the City, by its own terms, "considered, approved, and adopted" the Ordinance. The Ordinance's stated purpose is to end enforcement of misdemeanor marijuana possession, which Section 370.003 preempts.

Relatedly, the City argues that the Legislature did not preempt the Ordinance with "unmistakable clarity" because the Legislature did not use the term "is expressly preempted" or the like in the text of Section 370.003. The City cites the Legislature's ban on municipal fracking and its establishment of a minimum wage as examples of effective preemptive language. *See* Tex. Nat. Res. Code § 81.0523 ("The authority of a municipality or other political subdivision to regulate an oil and gas operation is *expressly* preempted[.]") (emphasis added); *see also* Tex. Labor Code § 62.0515 ("[T]he minimum wage provided by this chapter *supersedes* a wage established in an ordinance, order, or charter provision governing wages in private employment . . .") (emphasis added).

No magic words were necessary for the Legislature to preempt the Ordinance with unmistakable clarity. A plain and fair reading of the Ordinance presents irreconcilable inconsistency with Section 370.003. For example, the Ordinance prohibits police officers from "issu[ing] citations or mak[ing] arrests for class A or class B misdemeanor possession of marijuana offenses, except in the limited circumstances[.]" Although courts will adopt "reasonable" interpretations of a home-rule city's ordinance to avoid preemption, in this instance, there is no

14

reasonable way to read the Ordinance that does not directly conflict with the state statute prohibiting the adoption of policies under which the entity will not fully enforce such laws. *See Hotze v. Turner*, 672 S.W.3d 380, 387 (Tex. 2023); *See Dallas Merch.'s*, 852 S.W.2d at 491.

### 2. Fully Enforce

The Texas Supreme Court has held that "a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect, can be reached." *Beaumont v. Fall*, 291 S.W. 202, 206 (Tex. [Comm'n Op.] 1927). Invoking this authority, the City argues that Section 370.003 can be harmonized with the Ordinance because the Ordinance does not prohibit police officers from "fully enforcing" the state's drug laws. According to the City, no police force could "fully enforce" all drug laws, so the Ordinance simply allows San Marcos police discretion to focus their efforts on drug offenses involving other drugs and larger amounts of marijuana in addition to violent offenses. The City contends the term "fully enforce" in Section 370.003 cannot "reasonably and workably mean that the City is required to enforce drug laws in every single possible situation."

To be sure, police forces cannot "fully enforce" every violation of crime that occurs. But, the text of the Ordinance removes a category of offenses from the police officer's enforcement discretion. The mere fact that the goal of achieving full enforcement is unattainable does not mean that a municipality can ban citations and arrests for certain offenses.

The City also argues that the Ordinance is not preempted because the Ordinance will operate in many circumstances just like the ordinary exercise of crime prioritization and prosecutorial discretion. In other words, officers could have exercised their discretion in choosing not to issue citations or make arrests in the same categories of cases even in absence of the Ordinance. This does not save the

15

Ordinance. We find guidance in a similar preemption argument rejected by the Texas Supreme Court. In *BCCA Appeal Group, Inc. v. City of Houston*, the City of Houston sought to avoid preemption and to enforce its locally enacted air-quality regulatory regime. 496 S.W.3d 1, 5 (Tex. 2016). The Texas Supreme Court held that the Clean Air Act preempted the local ordinance because the local "enforcement provisions *authorize* the City to enforce the state's air-quality standards in a manner that is inconsistent with the statutory enforcement provisions." *Id*. at 16 (emphasis added). The Court rejected the argument that hypothetical convergence of the two enforcement regimes saved the ordinance from preemption. *Id*. That a City might choose to enforce its ordinance "in a way that does not violate the statutory requirements," *id*. at 17, did not mean that the ordinance was consistent with state law. Local regulations that authorize enforcement based on standards that are inconsistent with a statutory standard are not saved from preemption merely because some applications may produce consistent results. *City of Houston*, 664 S.W.3d at 806.

The City also argues that there is no actual conflict with state law because the Ordinance does not order police officers to stop enforcing drug laws. The text of the Ordinance belies that reading. The Ordinance plainly states that officers "shall not issue citations or make arrests for class A or class B misdemeanor possession of marijuana offenses, except in . . . limited circumstances[.]" The Ordinance makes any such citation or arrest a ground for "subject[ing] a San Marcos police officer to discipline." This directly conflicts with Section 481.134's codification of marijuana possession as a crime subject to law enforcement by arrest or citation. *See* Tex. Health & Safety Code § 481.120–.122. The fact that the Ordinance prohibits enforcement of only some drug laws—while leaving the enforcement of other drug laws to the officers' discretion—does not save the Ordinance from preemption.

We therefore sustain the State's first issue. The trial court had jurisdiction over the State's UDJA claim for a declaration that the Ordinance is preempted by state law. *See* Tex. Civ. Prac. & Rem. Code § 37.006(b). The State pleaded a viable claim that the Ordinance is preempted by Section 370.003 of the Local Government Code. Consequently, the UDJA waives the City's governmental immunity from the State's declaratory judgment action. *See Heinrich,* 284 S.W.3d at 373 n.6 ("For claims challenging the validity of ordinances or statutes . . . the Declaratory Judgment Act requires that the relevant governmental entities be made parties, and thereby waives immunity.").

## III. Dismissal of *Ultra Vires* Activity Claims Against City Officials

In its second issue, the State challenges the trial court's grant of the plea to the jurisdiction on its *ultra vires* action claims against the various City Officials. The State seeks a declaration that the Ordinance and any corresponding police department general order or directive are *ultra vires* and void.

In this case, whether the State has sufficiently pleaded facts or presented evidence to demonstrate subject matter jurisdiction over an *ultra vires* claim overlaps with the substantive issue of whether the State has established a probable right to relief to obtain a temporary injunction. For the reasons stated below, we conclude the State's pleadings, when liberally construed, and the evidence submitted, when viewed in the light most favorable to the State, allege facts sufficient to show that the City Officials acted without authority in adopting the Ordinance and implementing police procedures in compliance with the Ordinance.

The State's petition alleged that the City Officials lacked legal authority to adopt the Ordinance and any corresponding police department general order or directive. Governmental immunity does not bar a suit that seeks to bring local government officials into compliance with state law. *In re State,* No. 24-0325, 2024

17

WL 2983176, at *4 (Tex. June 14, 2024); *Hollins*, 620 S.W.3d at 410; *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 348. To fall within this *ultra vires* exception, a suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *See Heinrich*, 284 S.W.3d at 372; *see also Hall v. McRaven*, 508 S.W.3d 232, 240–41 (Tex. 2017).

"[A]ctions taken 'without legal authority' ha[ve] two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *McRaven*, 508 S.W.3d at 239. A government officer acts without legal authority if he or she exceeds the bounds of the granted authority or if his or her acts conflict with the law itself. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). A preempted law has no effect. *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001). With these principles in mind, we examine the *ultra vires* claim as to each defendant.

### A. The City Council Members and the Mayor

The Texas Constitution deprives home-rule cities of the power to enact ordinances that conflict with state law. Tex. Const. art. XI § 5. Here, the State pleaded that the Local Government Code forbids the "governing body of a municipality"—here, the City Council members and the Mayor—from adopting a policy that "will not fully enforce laws relating to drugs." Tex. Loc. Gov't Code § 370.003. According to the State, the City Council members and the Mayor committed an *ultra vires* act when they approved and adopted the unlawful Ordinance that conflicts with Section 370.003 of the Government Code.

These allegations were borne out by the evidentiary record, which shows that the City Council adopted the Ordinance without discussion after canvassing the election and certifying the results. The Mayor signed the resolution that

18

"CONSIDERED, APPROVED, and ADOPTED" the Ordinance. The State, therefore, has sufficiently alleged an *ultra vires* claim that the City Council members and Mayor acted without legal authority.

The City Officials allege their actions were not *ultra vires* because they were required to adopt the Ordinance as approved by the voters. The authority on which the City Officials rely, however, does not apply to the adoption of citizen-initiated ordinances. Each case relied on by the City Officials requires a city to hold an election once citizens have properly exercised their initiative rights. But these cases do not speak to the City Officials' discretion to adopt an ordinance that conflicts with state law. *See In re Rogers*, 690 S.W.3d 296, 301 (Tex. 2024) (orig. proceeding) ("[O]ur precedents reflect a strong preference in favor of holding elections on qualified ballot measures even where there is some question about whether the measure, if passed, would be subject to valid legal challenge."); *see also Glass v. Smith*, 244 S.W.2d 645, 653 (Tex. 1951) (holding that when citizens exercise their rights under the initiative provisions of a city charter the city must perform its duties and carry out the initiative procedure).

The City Officials further assert they would be subject to *ultra vires* liability if they had not adopted the Ordinance after it was approved by the voters. While the authority cited by the City Officials may require a citizen-initiated proposition to be placed on the ballot, that authority does not translate into a ministerial duty for the City Officials to adopt and enforce an illegal Ordinance. The Texas Supreme Court has distinguished between these two circumstances: "[t]he right to call and hold a void election is a political right that the courts have no jurisdiction to interfere with, . . .[] the right to enforce a void election in such a way as to violate the laws of this state would present a matter that the judicial power of the government would have the right to give relief from." *In re Morris*, 663 S.W.3d 589, 596 (Tex. 2023) (orig.

19

proceeding).

The State alleged that the City Council members and Mayor violated state law by "adopt[ing] a policy under which the [City] will not fully enforce laws relating to drugs[.]" As such, the State has pleaded a valid *ultra vires* claim by pleading that the City Officials acted without legal authority. *See Hollins*, 620 S.W.3d at 410 ("[a]s a sovereign entity, the State has an intrinsic right to . . . enforce its own laws." (alteration in original)). To be sure, the City Officials challenge their authority to invalidate a citizen-initiated ordinance. They assert the Ordinance was "self-enacting" and that all the City Council did was certify the election. The City Officials further assert that their vote to adopt the Ordinance was merely a vote to certify the tabulation of votes. This argument presents a fact issue that goes to the merits of the State's *ultra vires* claims that we do not resolve at this juncture. Because the evidence creates a fact question on whether the City Council members and the Mayor acted *ultra vires* in contravention of the Local Government Code, the trial court could not grant the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228. We sustain the State's first appellate issue with respect to the City Council members and the Mayor.

## B. The Police Chief

The State argues that the trial court erred by dismissing its *ultra vires* claim against the Police Chief.

The State argues that it has pleaded a valid claim that falls within the exception to governmental immunity. It is undisputed that the Ordinance tasks Reyes, the City Manager, and the Police Chief with enforcement and implementation of its requirements. The State presented evidence that the Police Chief issued the Memorandum as a "written directive" instructing the police force regarding the requirements of the Ordinance, and that he used the Memorandum to provide

20

"training concerning each of the provisions of this ordinance." The Memorandum advises officers on how to act in accordance with the Ordinance on topics including juveniles, destruction of marijuana, and police officers' inability to use odor to support probable cause. The Memorandum closed by reiterating the Ordinance's warning that violating the ordinance "may subject" officers to discipline and explaining the department's disciplinary process. The Police Chief also instructed his police force that juveniles were "exempt" from misdemeanor marijuana possession charges.

The City Officials respond that the Memorandum did no more than communicate the requirements of the Ordinance itself, which does not prevent the full enforcement of the state's drug laws. Because the State's evidence raises a fact issue on the question of whether the Police Chief has committed an *ultra vires* act, we sustain the State's first appellate issue with respect to the State's claim against the Police Chief.

## B. The City Manager

The State also appeals the trial court's grant of the plea to the jurisdiction on its *ultra vires* action claim against Reyes, the City Manager.

The State argues that jurisdiction is waived because the Ordinance tasks Reyes and the Police Chief with enforcement and implementation of its requirements. The State also presented evidence that Reyes is responsible for executing the laws and administering the government of the City. The Police Chief also testified that Reyes, for whom he works, did not provide him with authority to refuse to enforce the Ordinance.

The City Officials argue that although the Ordinance may task Reyes, the City Manager, with enforcement and implementation, there is no evidence that Reyes has

21

actually taken an action that could constitute an *ultra vires* act. We agree with the City Officials that the State has not pleaded or presented evidence of an act taken by Reyes to implement or enforce the Ordinance, so the trial court did not err by granting the plea to the jurisdiction. When upholding a plea to the jurisdiction on governmental immunity grounds, we give the plaintiff an opportunity to replead if the defect can be cured. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 623 (Tex. 2011); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Here neither the pleadings nor the record refute jurisdiction, so we give the State an opportunity to replead. We overrule the State's first issue with respect to its claim against Reyes, the City Manager, but modify the order to reflect that dismissal is without prejudice to allow the State an opportunity to replead.

## IV. Temporary Injunction

In its second issue the State argues the trial court erred in denying its application for temporary injunction. To be entitled to a temporary injunction, the State must "prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Hollins*, 620 S.W.3d at 405.

### A. Cause of Action

The State has a valid declaratory judgment cause of action against the City to establish that the Ordinance in question is preempted. *See Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69, 76–77 (Tex. 2015). The adoption of an ordinance which is contrary to state law gives rise to a cause of action against the City on behalf of the State. *See id.* Not only does the Texas Constitution prohibit a city from acting in a manner inconsistent with the general laws of the state, Tex. Const. art. XI, § 5, but "the [L]egislature may, by general law, withdraw a particular subject from a home rule city's domain." *Tyra v. City of Houston*, 822 S.W.2d 626,

628 (Tex. 1991). And, for the reasons explained in Part II, the City is not entitled to governmental immunity on the State's claim.

Appellees dispute the existence of a cause of action against the City on the ground that its governing body did not choose in its discretion to adopt the ordinance, the voters did. This argument is untenable. The Constitution states that "no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5(a). Predictably, this constitutional prohibition contains no carveouts for ordinances resulting from local voter initiative processes. The City's own charter recognizes these limitations in directing that "[t]he people of the city . . . may propose any ordinance or repeal any ordinance not in conflict with . . . the State Constitution, or the state laws." The carveout proposed by Appellees would subvert the power of the State over its municipalities, which "exist solely by virtue of the State Constitution and legislative enactments," *Willis v. Potts*, 377 S.W.2d 622, 625 (Tex. 1964), and are best characterized as having a "principal-agent" relationship with the State. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 643 (Tex. 2004).

The State further satisfied the first requirement by pleading a valid *ultra vires* claim against the City Officials, with the exception of Reyes, the City Manager. Section 370.003 explicitly removes from all municipalities the power to "adopt a policy under which the entity will not fully enforce laws relating to drugs[.]" Tex. Loc. Gov't Code § 370.003. For nearly a century, Texas courts have recognized the "elementary" rule that the "state may maintain an action to prevent abuse of power by public officers." *Yett v. Cook*, 281 S.W. 837, 842 (Tex. 1926) (orig. proceeding); *Hollins*, 620 S.W.3d at 405. "[T]he State has an intrinsic right to . . . enforce its own laws [and] where those laws are being defied or misapplied by a local official, an

23

*ultra vires* suit is a tool 'to reassert the control of the state.'" *Hollins*, 620 S.W.3d at 410.

There is no governmental immunity bar to a lawsuit to require local officials to comply with Section 370.003. Accordingly, the first requirement is satisfied with the exception of the claim against Reyes, the City Manager.

### B.     Probable Right to the Relief Sought

Turning to the second requirement, we find that the State established a probable right to relief with respect to some of the relief sought in its temporary injunction request, but not all of the relief sought in its temporary injunction request.[5]

The State established a probable right to prevail on its theory that Local Government Code Section 370.003 preempts the Ordinance, depriving that law of effect. This theory lies at the heart of the State's requests for temporary relief. The Legislature can "withdraw a particular subject from a home rule city's domain" "by general law." *Tyra*, 822 S.W.2d at 628. Section 370.003 explicitly removes from all municipalities the power to "adopt a policy under which the entity will not fully enforce laws relating to drugs[.]" Tex. Loc. Gov't Code § 370.003. As explained in Part II, the Ordinance is preempted because it erects multiple barriers that prevent the City of San Marcos and its police officers from fully enforcing the state's drug laws. The City's argument that Texas's suit is an invalid attempt to control

---

[5] The State requested a temporary injunction enjoining Appellees from enforcing the Ordinance and ordering Appellees to (a) repeal the Ordinance; (b) cancel any corresponding San Marcos Police Department general order or directive; (c) fully enforce the drug laws in Chapter 481; (d) not discipline any employee of the City of San Marcos for enforcing the drug laws in Chapter 481; and (e) modify city policies and internal operating procedures to the extent that they have been updated in response to the Ordinance. On appeal, the State requests only an injunction enjoining Appellees from enforcing the ordinance and ordering Appellees to repeal the Ordinance.

prosecutorial discretion fails. The Ordinance's prohibition on prosecuting certain criminal offenses is not an exercise in the discretion of law enforcement officials. Under the Ordinance, law enforcement officials and prosecutors, who act as the agents of Texas in enforcing State drug laws, *Wilkerson v. State*, 173 S.W.3d 521, 528 (Tex. Crim. App. 2005), lose their discretion to enforce the laws because they have no choice but to categorically excuse crimes.

The State's demonstration that the Ordinance is preempted justifies the relief that the State requests in the prayer of its opening brief: a temporary injunction prohibiting the enforcement of the Ordinance pending a final trial on the merits. This relief encapsulates one of the requests for relief that the State requested in its motion for temporary relief—a temporary injunction enjoining the enforcement of the Ordinance and any corresponding San Marcos Police Department general order or directive. Such a temporary injunction adequately protects the State's "'justiciable interest in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law'" while the appeal is pending. *Hollins*, 620 S.W.3d at 410 (quoting *Yett*, 281 S.W. at 842).

The State has also challenged the trial court's denial of its request for a temporary injunction ordering the repeal of the Ordinance, but the State cites no authority establishing that a state appellate court can order repeal of a preempted ordinance.[6] On the contrary, the Texas Supreme Court has held that when "a court

---

[6] The authorities cited in the State's post-submission briefing do not hold that a Court may order repeal of a preempted statute. *In re Woodfill* addressed a situation where Houston residents "filed a referendum petition requesting the City Council to reconsider and repeal its equal rights ordinance and, if it did not repeal the ordinance, to put it to popular vote." *In re Woodfill*, 470 S.W.3d 473, 475 (Tex. 2015). Because the petition obtained the required number of signatures, the Court granted conditional mandamus relief requiring that Houston officials either "repeal the ordinance" or "submit it to popular vote," as the city charter required. *Id.* at 476, 481. There was no preemption claim at issue. The Court issued conditional mandamus relief requiring the Houston City Council to comply with its own laws regarding the handling of a referendum petition in *In re*

declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it." *Pidgeon v. Turner*, 538 S.W.3d 73, 88 n.21 (Tex. 2017). The same is necessarily true when an ordinance is held to be preempted—it is unenforceable, but it does not disappear.

Ordering the repeal of an ordinance would present grave separation-of-powers problems. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018). Courts have "no authority to erase a duly enacted law from the statute books, and they have no power to veto or suspend a statute. The power of judicial review is more limited: It permits a court to decline to enforce a statute in a particular case or controversy, and it permits a court to enjoin executive officials from taking steps to enforce a statute—though only while the court's injunction remains in effect." *Id.* (citations omitted); *Steffel v. Thompson*, 415 U.S. 452, 469 (1974) ("Of course, a favorable declaratory judgment . . . cannot make even an unconstitutional statute disappear."); *see Ex parte E.H.*, 602 S.W.3d 486, 502 (Tex. 2020) (Blacklock, J., dissenting) ("Courts are not legislatures. The Texas Constitution reserves the law-making and law-rescinding powers to the Legislature, and it prohibits the judiciary from 'exercis[ing] any power properly attached to either of the other [] [branches].'" (quoting Tex. Const. art. II, § 1)). The Texas Constitution vests the City of San Marcos, not the Court, with authority to adopt and repeal ordinances. In any event, ordering a repeal would constitute permanent relief that is unavailable at the temporary injunction stage.[7] Temporary injunctions are

*Williams*, 470 S.W.3d 819, 820 (Tex. 2015).

[7] The State's requests for the cancellation of Police Department general orders or directives and the modification of city policies also go beyond the scope of permissible temporary relief, the purpose of which is to "preserve the status quo of the litigation's subject matter pending a trial on the merits." *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002).

issued "to prevent only harm that cannot be prevented after a final determination on the merits," and that can be accomplished here short of repeal. *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.).

Furthermore, the State is not entitled to—or necessarily still seeking—a temporary injunction requiring that the City and City Officials "fully enforce the drug laws in Chapter 481." The State acknowledges that Section 370.003 does not mandate that cities fully enforce the State's drug laws; it prohibits them from adopting policies that would frustrate their ability to do so. *See 31 Holdings I, LLC v. Argonaut Ins. Co.*, 640 S.W.3d 915, 922 (Tex. App.—Dallas 2022, no pet.) (distinguishing prohibitive and mandatory injunctive relief). Accordingly, we find that the State has established its right to a temporary injunction enjoining Appellees from enforcing the Ordinance.

## C.     Probable, Imminent, and Irreparable Injury in the Interim

The final requirement for a temporary injunction is that the State demonstrate a "a probable, imminent, and irreparable injury in the interim." *Tex. Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 441 (Tex. App.—Austin 2018, pet. denied). The State has satisfied the requirement of demonstrating probable, imminent, and irreparable injury. The Texas Supreme Court has repeatedly reaffirmed the fundamental rule that the State has an "intrinsic right to . . . enforce its own laws." *Hollins*, 620 S.W.3d at 410 (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)); *Printz v. United States*, 521 U.S. 898, 912 n.5 (1997); *Yett*, 281 S.W. at 842. Given this authority, there is no question that a local official's violation of state law inflicts irreparable harm on the State. *In re State*, 2024 WL 2983176, at *4 ("Indeed, the violation of duly enacted state law by local government officials clearly inflicts irreparable harm on the State." (citations and internal quotation marks omitted)); *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) (The "inability [of a state] to enforce

its duly enacted [laws] clearly inflicts irreparable harm on the State."); *see also Tex. Ass'n of Bus.*, 565 S.W.3d at 441.

In *Hollins*, the Texas Supreme Court held that the State's "justiciable interest in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law" supported a temporary injunction. *Hollins*, 620 S.W.3d at 410. In reaching that conclusion, the Court emphasized that the sovereign "would be impotent to 'enforce its own laws' if it could not temporarily enjoin those breaking them pending trial." *Id*. Thus, "[w]hen the State files suit to enjoin *ultra vires* action by a local official, a showing of likely success on the merits is sufficient to satisfy the irreparable-injury requirement for a temporary injunction." *Id*. For the reasons explained above, the State made that showing.

### D.     Status Quo, Preservation of Equity, and Compliance with Rules of Civil Procedure

In addition to the three required elements for a temporary injunction, Appellees make several arguments in favor of the trial court's denial. Appellees first argue the requested relief would not "preserve the status quo." Appellees assert that because the Ordinance has been in effect since 2022, "the last uncontested status quo" was no enforcement of misdemeanor marijuana possession laws.

The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016). The continuation of illegal conduct, however, "cannot be justified as preservation of the status quo." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). Where the acts sought to be enjoined constitute violation of the law —or, in this case, a continued failure to enforce state law—the status quo to be preserved cannot be a continuation of those acts. It is undisputed that possession of marijuana is illegal in Texas. *See* Tex. Health & Safety Code § 481.121 Therefore, we cannot

28

justify allowing state law to continue to be violated. We further note that the record reflects that other jurisdictions, such as the Hays County Sheriff's Department and the Texas Department of Public Safety, are not bound by the Ordinance and, therefore, have been permitted to issue citations and arrest violators for misdemeanor possession of marijuana.

Finally, Appellees challenge the State's request for a temporary injunction on the grounds that it does not comply with Rule 683 of the Rules of Civil Procedure. Rule 683 governs injunctions and provides in relevant part:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Tex. R. Civ. P. 683.

"The requirements of Rule 683 are mandatory and must be strictly followed." *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam). The rule, however, mandates the contents of the trial court's temporary injunction, not the contents of the requesting party's application. Compliance with Rule 683 is an issue for the trial court on remand. Because there is no temporary injunction in place, any Rule 683 challenge is premature.

We sustain the State's second issue in part with respect to its request for a temporary injunction prohibiting enforcement of the Ordinance pending a final trial on the merits. We overrule the State's second issue with respect to the other relief that the State requested, and as to all relief requested against Reyes, the City Manager.

29

## CONCLUSION

We reverse the trial court's order granting the plea to the jurisdiction with the exception of the State's claim against Reyes, the City Manager. We modify the trial court's order to reflect that dismissal of the State's claims against Stephanie Reyes, the City Manager, is without prejudice and affirm that portion of the trial court's order as modified. When we uphold a plea to the jurisdiction on sovereign immunity grounds, we allow the plaintiff the opportunity to replead if the defect can be cured. Although the State's pleadings against Reyes, the City Manager, do not affirmatively demonstrate jurisdiction, neither do they refute jurisdiction, and the State should have an opportunity to replead in an attempt to cure the jurisdictional defects. Therefore, we modify the order to dismiss without prejudice to allow the State the opportunity to replead. We reverse the order denying the State's request for temporary injunction prohibiting enforcement of the Ordinance. We remand the case to the trial court for proceedings consistent with this opinion and to enter a temporary injunction prohibiting the enforcement of the Ordinance pending a final trial on the merits.

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.